DAVE WILLIAMS PRINTING COMPANY, INC., and Mary Lou Fry, Plaintiffs-Appellees,

v.

Cora S. WOOTEN, Defendant-Appellant.

Court of Appeals of Tennessee, Western Section.

Oct. 6, 1982.

Permission to Appeal Denied by Supreme Court Nov. 22, 1982.

Wilson, McRae, Ivy, Sevier, McTyier and Strain, Memphis, for plaintiffs-appellees.

Tim Wade Hellen, Farris, Hancock, Gilman, Branan, Lanier & Hellen, Memphis, for defendant-appellant.

## OPINION

BROOKS McLEMORE, Special Judge.

This is a suit by the optionee seeking specific performance of an option contract for the sale of real property. The Chancellor held:

1. The plaintiff-optionee gave the defendant-optionor notice of intention to exercise the option within the time provided by the contract.

2. The plaintiff-optionee was not required to tender payment with notice to exercise the option and was entitled to specific performance.

3. The plaintiff-optionee was under no obligation to pay rent on the real estate after July 30, 1981.

On appeal, the defendant-optionor asserts that the Chancellor erred on all three holdings.

We affirm the judgment of the Chancellor.

The option contract is one of the provisions of a lease contract. The lessees and optionees are Dave Williams Printing Company, Inc., and Mary Lou Fry. For convenience they will be referred to as Fry, optionee, or plaintiff.

In 1978 Wooten was the owner of a commercial building in Memphis, Tennessee. Fry at that time had lost her lease on her previous building and was working with Mr. Jerry Cunningham of Edward LeMaster Company, Realtors, to locate a new building suitable for her business. On behalf of Fry, Mr. Cunningham came to Wooten with a proposal to lease her building with an option to purchase. The lease-option contract was drafted by the LeMaster Company and, after some negotiation concerning particular terms, the lease-option contract was entered into on June 20, 1978. The over all lease was for five years and contained the following option clause:

Lessee shall have the option to purchase the above-described property at any time during the first three (3) years of this lease for a price of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars. The property may be purchased for all cash or at the option of the purchaser, by paying 25% cash at closing and the seller taking back notes amortized over a 15 year period at 9% interest or at an

interest rate of one point above prime rate quoted by First Tennessee Bank at the time option is exercised (whichever is higher). In the event of a purchase, the terms of closing shall be those provided in a Mid-South Title Company sales contract.

The Mid-South Title Company sales contract contains the following language:

... Settlement and payment of balance, if any, of cash payment shall be made upon presentation of a good and valid warranty deed with the usual covenants and conveying a good and merchantable title, after allowing fifteen days from completion of title search or the delivery of abstracts for examination of title...

Pursuant to the said lease agreement, Fry did occupy the premises; however, Wooten continued to occupy a portion of the building under the terms of a sub-rental agreement between the two of them. Under this arrangement Fry occupied the great majority of the building area and operated a printing business therein. Wooten occupied office space within the building from which she operated an electronics supply distribution office. Between June 20, 1978 and June, 1981, the parties had no conversation or other communication between them concerning the said option clause.

Sometime in late May or early June, 1981 Fry applied to Leader Federal Savings and Loan Association for a loan in the amount of $150,000 with which to finance the purchase price called for in the option clause. On June 11, 1981, Fry received word that her loan application had been approved. On June 15, 1981, Fry received a written loan commitment from Leader Federal. This commitment together with subsequent extensions ran until October 15, 1981.

Fry testified, and the Chancellor found, that on the afternoon of Wednesday, June 17, 1981, she hand delivered to defendant an envelope addressed to defendant containing a letter giving notice that she wished to purchase the property under the option clause, a Mid-South Title Company sales contract, and a check in the amount of $1,000.00. The letter was written on Dave Williams Printing Company, Inc., stationery and was as follows:

Mrs. Cora S. Wooten
644 Madison Avenue
Memphis, TN 38103

Dear Mrs. Wooten:

We do hereby give you notice that we will exercise the option to purchase the property described in the lease agreement dated June 20, 1978 for a price of $150,-000 cash.

Enclosed is a Mid-South Title Company sales contract in duplicate for your signature. Also enclosed is a check for $1,000 earnest money.

Very truly yours,

/S/ Mary Lou Fry

Mary Lou Fry
President

June 17, 1981

cc: Mr. Charles Sevier

Defendant Wooten testified that she never received any such documents from Fry on June 17, 1981 or at any time on or before June 20, 1981, though they were later delivered to her on or after June 23, 1981.

The dispute between the parties as to the time of the delivery of the letter and the documents is purely a question of fact. The Chancellor in his finding of fact, among other things, said:

But the best way I can categorize my evaluation of the credibility or the plaintiff carrying the burden of proof on the issue of credibility of their witnesses is to say that in my opinion they carried the burden of proof not only by a preponderance of the evidence but in my opinion beyond all moral certainty, beyond a reasonable doubt and to a moral certainty. I look at the demonstrative evidence, and I don't believe that there is a fabrication of the check records. I don't believe that the two—the lady who was in charge of one department and the other lady in charge of the art department—I don't believe that they were gloating. I don't think they were sitting there as part of this feud hoping that the knife would be

twisted in the defendant. I think they were, as they have testified, happy. This had been something they have been looking forward to...

I, therefore, do believe that indeed the plaintiff went into the defendant's office, and while the defendant was on the phone, handed her that envelope, and that that envelope indeed contained the documents that have been testified to.

■ Appellate review of findings of fact by the trial court in civil actions is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.R.A.P. Rule 13(d), and cases so numerous as not to require citation.

■ The evidence does not preponderate against a finding for the plaintiff on the fact issue.

Defendant strongly contends that in order for the plaintiff to be entitled to specific performance that a purchase must have been fully consummated prior to June 20, 1981, i.e., the purchase money must have been tendered within the three year period. To support this contention the defendant relies upon the case of *Adams v. Swift,* 500 S.W.2d 437 (Tenn.App.M.S.1973) *cert. denied, id.* (Tenn.1973). That case, along with other authority cited by the plaintiff, stands for the proposition that the conditions and mode of accepting an option to purchase must be strictly complied with.

The Chancellor considered *Adams v. Swift* and cases cited therein, particularly *Jones v. Horner,* 36 Tenn.App. 657, 260 S.W.2d 198 (Tenn.App.E.S.1953) *cert. denied, id.* (Tenn.1953), but distinguished those cases because of the last sentence of the option clause in the instant case which refers to a Mid-South Title Company sales contract. We think he was correct in so doing.

The option contract construed in *Adams v. Swift* contained the following language: Said option to purchase may be exercised by said second party at any time prior to January 20, 1970 or by his assigns, upon

terms, as follows: The purchase or option price is $15,100.00 payable, as follows: CASH (Any indebtedness against property to be deducted from proceeds when transaction is closed.) Second Party reserves the privilege of going upon the property for the purpose of survey, engineering and etc.

Mid-South Realty Company to receive a 6% sales commission out of the proceeds of sale when transaction is closed.

The option contract also contained the following provision:

First party has 90 days in which to vacate property *after transaction is closed January 20, 1970, at no cost.* Rental will be $50.00 per month, thereafter, until notified by Second Party. (Emphasis supplied.)

Five hundred dollars was paid for the option and was to be credited on the purchase price in the event the option was exercised.

Five days prior to the expiration of the option the optionee wrote a letter giving notice that he desired to exercise the option to purchase. No tender of purchase money was made prior to January 20, 1970.

The court held notice alone was insufficient and said:

The contract does not provide that the option may be exercised simply by giving of notice and it plainly means that, in order for same to be exercised, it was necessary for complainant to pay or tender to the defendants the balance of said purchase price, which would have been $14,600.00, on or before January 20, 1970.

Moreover, the language of the option plainly shows that the transaction was to have been closed not later than January 20, 1970, and it is not stipulated that the defendants granted any extension of time beyond that date.

The court further said at page 441:

*The principal question to be determined in the instant case hinges upon construction of the language of the option itself, which according to our interpretation*

thereof plainly means payment or tender of the purchase price as a condition precedent to the exercise of the option. (Emphasis supplied.)

■ We find no fault with the holding in *Adams v. Swift,* on the facts of that case, however it is not dispositive of the instant case. The question presented has been the subject of much litigation throughout the country. *See,* Annot., 71 A.L.R.3rd 1201, 1204–56. In the case before this court, the question to be determined requires a construction of the language of the option itself as was the case in *Adams v. Swift.* The cardinal rule for interpretation is to ascertain the intent of the parties. We must look to the particular language of the specific option. To do that we look at the option clause as a whole and not in parts. The option contract does not say how it is to be exercised. The contract does not explicitly require the payment of the purchase price as a condition precedent to exercise of the option and it does not specify such payment as the mode or manner of acceptance of the optionor's offer.

■ The last sentence of the clause brings into play the provisions of another document, the Mid-South Title Company sales contract. We think it is this last sentence that distinguishes the instant case from that of *Adams v. Swift.* The parties provide for an orderly exchange of payment and title to the property in order to consummate a purchase. The words "option to purchase" do not mean a completed transaction or require a tender of payment prior to the receipt of indicia of title nor do we believe that the parties intended such a result. We construe this option contract to require a notice of acceptance within the three year period and a closing pursuant to the terms of the Mid-South Title Company sales contract.

■ The Chancellor having held that the option had properly been exercised determined that the closing should have taken no longer than July 30, 1981 and as a consequence adjudicated that no further rent was due the optionor after said date and that all rents already paid by the optionee

after that date should be applied as a credit toward the purchase price. The Chancellor further adjudged that optionee-plaintiff have full possession of the premises. Optionor-appellant contends that to deprive her of both the rents and the purchase money pending the appeal is inequitable.

This issue is controlled by the case of *Wright v. Universal Tire, Inc.,* 577 S.W.2d 194 (Tenn.App.W.S.1979) *cert. denied, id.* (Tenn.1979). In that case, the court said:

> When the option was exercised by the appellee, the lease and all of its incidents, including the obligation to pay rent, was blotted out of existence, and the relation of vendor and vendee was created. The appellee had an equitable interest in the land and equitable title passed to it, subject to the payment of the purchase price. *Chapman Drug Company v. Chapman,* 207 Tenn. 502, 341 S.W.2d 392 (Tenn. 1960). The appellant lost interest on the proceeds of the sale as a result of his refusal to comply with the terms of the contract; for this, he cannot complain.

We think the foregoing is applicable here and we find no error.

The judgment of the Chancellor is affirmed in all respects and the case is remanded to the Chancery Court of Shelby County for any further appropriate action not inconsistent with this opinion.

The costs in this court are assessed against the defendant-appellant, Cora S. Wooten for which let execution issue, if necessary.