# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

June 12, 1998

Cecil W. Crowson
Appellate Court Clerk

THOMAS A. (TOMMY) WORTHAM,   )
   )
     Plaintiff/Appellant,   )
   )   Appeal No.
   )   01-A-01-9709-CV-00464
VS.   )
   )   Dickson Circuit
   )   No. CV762
WEST MEADE CORPORATION,   )
JOY MARSH, PRESIDENT,   )
   )
     Defendant/Appellee.   )

APPEALED FROM THE CIRCUIT COURT OF DICKSON COUNTY
AT CHARLOTTE, TENNESSEE

THE HONORABLE ROBERT BURCH, JUDGE

NEAL LOVLACE
HARVILL & LOVLACE
102 Bank Avenue
Centerville, Tennessee 37033
     Attorney for Plaintiff/Appellant

HENRY F. TODD, JR.
TODD, SPENCER & ATKINS
404 East College Street
Dickson, Tennessee 37055
     Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
KOCH, J.
WELLES, S.J.

## O P I N I O N

The plaintiff filed suit for specific performance on an option to purchase real property. The trial court found that the plaintiff had failed to exercise the option before it expired, and granted summary judgment to the defendant property-owner. We affirm the trial court.

## I.

The facts of this case are undisputed, and relatively simple. In September of 1993, Mark Cook and Kenneth Godwin signed a contract to lease the Tice Springs Market in Dickson, Tennessee from West Meade Corporation. The duration of the lease was to be three years, from September 1, 1993 until August 31, 1996. One clause in the contract set out the terms of an option to purchase the property:

> OPTION TO PURCHASE. It is hereby granted to Lessee an option to purchase said property at any time during the term of this agreement or renewal therof. Such option shall be secured by the payment of Five Thousand and No/100 ($5,000.00) Dollars, cash in hand paid, the receipt of which is hereby acknowledged. In the event that this option is exercised, said Five Thousand and No/100 ($5,000.00) Dollars shall be applied to the purchase price. The purchase price for said real property under this option shall be Sixty Thousand and No/100 ($60,000) Dollars. The Lessee upon exercising this option shall be given credit for the principal amount of payments amortized on a balance of Fifty Five Thousand and No/100 ($55,000) Dollars for a period of ten (10) years at 10.5% interest. Said payments shall be deducted from the purchase price. If the option is not exercised, any and all monthly payments and the original option payment of Five Thousand and No/100 ($5,000) Dollars shall now and forever be considered as rent for the period of occupancy of the Lessee and possession of the real property.

Another clause in the lease gave the lessee the right to renew the contract for an additional three years at the end of the initial lease period, subject to renegotiation of the rental rate, said new rental rate not to exceed the current level by more than 10%. Still another clause provided that if at the end of the three-year term the lessee remained in possession of the premises without renewal, he would then

become a tenant at will on a month-to-month basis, and there could be no "renewal, dislease, or exercise of any option by operation of law."

On February 1, 1994, the lessees assigned the lease to the plaintiff, Tommy Wortham, "in consideration of Ten Dollars ($10.00) and other good and valuable considerations." Mr. Wortham presumably operated the market for the remainder of the lease period. On August 14th or 15, 1996, Eric Baxter, an employee of West Meade Corporation met with Mr. Wortham, and gave him an amortization schedule, which indicated that if Mr. Wortham wished to purchase the property, the pay-off amount was $41,580.33. In his affidavit, Mr. Baxter stated that he advised Mr. Wortham at that time that if he wanted to purchase the property, but was not yet ready to do so, he could preserve his rights by renewing the lease.

On August 22, 1996, Mr. Wortham's attorney sent a letter to West Meade which stated, "[p]lease be advised that Mr. Wortham intends to exercise the option to purchase. He will make every effort to finish his financing arrangements so that the purchase can be completed within the next thirty (30) days."

The attorney for West Meade responded with a letter that was sent on August 28, 1996: "Please remember that the lease expires on September 1, 1996. Without waiving any rights or altering the lease, my client has advised me that your client may purchase the property for the pay-off amount as long as it is closed by September 15, 1996."

Mr. Wortham's attorney replied with a letter dated September 16, 1996, which reads in pertinent part:

> "My client has been working on financing and he anticipates that we will be able to tender the purchase price before the end of the month. I would point out that I could not tell from the lease and option to purchase that the September 15th deadline you mentioned in your letter was called for by the terms of the lease. In fact, the lease provides that should the

Lessee hold over then it becomes a month to month lease. I have advised my client that he now has a month to month lease and, in fact, he has tendered the lease payment of $800.00 as he has done in many months past."

On September 30, 1996, Mr. Wortham tendered the purchase price. West Meade did not accept it. Mr. Wortham then filed suit to enforce the option. Both parties filed motions for summary judgment, each one declaring that there were no disputes of material fact. The trial court found the case to be a close one, but upon examination of the facts and the applicable case law, he granted summary judgment to the defendant. This appeal followed.

## II.

The cardinal rule for interpreting contracts (including option contracts) is to ascertain the intention of the parties, and to give effect to that intention, consistent with legal principles. *Bob Pearsall Motors v. Regal Chrysler-Plymouth,* 521 S.W.2d 578 (Tenn. 1975). To learn the parties' intention, the words within the contract must be given their usual, natural and ordinary meaning, unless both parties agree at the time of contract that their meaning is otherwise. *Moore v. Moore*, 603 S.W.2d 736 (Tenn. App. 1980); *American National Property and Casualty v. Gray*, 803 S.W.2d 693 (Tenn. App.1990).

The contract at issue gave the plaintiff the right "to purchase said property at any time during the term of this agreement or renewal thereof," but the right expired when he became a tenant at will. Although Mr. Wortham asserts that he exercised the option by sending his letter of August 22, 1996, we do not deem that letter to be the equivalent of a "purchase," as that word is ordinarily understood. We would not go so far as to construe the terms of the contract as absolutely requiring the parties to close before September 1, 1996, but we believe a more definitive act was

- 4 -

required on the part of Mr. Wortham to "purchase" the property within the applicable period.

The general law of options is not so rigorous as to require a party to close on the property within the option period in order to exercise his rights (unless the contract so specifies), but it does require him to bind himself by an unqualified acceptance before he will be deemed to have validly elected to make the purchase:

> "An option cannot be enforced as a contract until exercised by acceptance. The acceptance must be unqualified, absolute, positive, without reservation, and according to the terms of the option. An acceptance of an option must be such a compliance with the conditions as to bind both parties, and if it fails to do so, it binds neither."

*Pinney v. Tarpley*, 686 S.W.2d 574, 580 (Tenn.App. 1984)

It does not appear to us that the plaintiff's letter of August 22 met this standard. We are doubtful that the mere announcement of an intention to exercise an option, coupled with a promise to attempt to secure the financing in thirty days is so definite an acceptance as to bind the optionee if he were to change his mind or unable to secure financing.

At trial and on appeal, the parties relied upon two different cases to bolster their respective positions: *Adams v. Swift*, 500 S.W.2d 437 (Tenn. App. 1973) and *Dave Williams Printing Co. v. Wooten,* 644 S.W.2d 403 (Tenn. App. 1982). In both of those cases, as in the present case, an optionee announced an intention to exercise his option shortly before the option contract expired, but was not prepared to close within the option period; the owner in each case refused to sell the property, and the optionee brought suit for specific performance. In the *Adams* case, this court affirmed the trial court's denial of specific performance, while in the *Dave Williams* case, we affirmed the trial court's order that the plaintiff be granted specific performance.

The contract in the *Dave Williams* case required that the terms of closing be those provided in a Mid-South Title Company sales contract. The sales contract in question allowed fifteen days from the examination of title before the parties settled by the reciprocal performances of making a cash payment for any balance owing, and presenting a warranty deed. The proof showed that three days before the end of the option period, the lessee hand-delivered to the defendant a notice that she wished to purchase the property under the option clause. Accompanying the notice was a Mid-South Title Company sales contract for the seller's signature, and a $1,000 check as earnest money.

The court held that this was sufficient to bind the parties, and noted in particular the importance of the clause relating to the Mid-South Title sales contract in its decision. We believe that the tender of the sales contract served three important functions: it signalled to the seller the intention of the buyer to strictly comply with the terms of the option, it extended the permissible date of closing by a specific number of days, and it provided for "an orderly exchange of payment and title to the property in order to consummate a purchase." 644 S.W.2d at 407.

The *Dave Williams* court specifically distinguished that case from *Adams* in that there was no such sales contract clause involved in the *Adams* case. The same distinction applies to the present case. Like the contract in the present case, the *Adams* contract was quite specific as to the time in which the option had to be exercised, but far less specific as to the manner in which it was to be exercised. The relevant language of the option contract in the *Adams* case simply read "[s]aid option to purchase may be exercised by said second party at any time prior to January 20, 1970, or by his assigns, upon terms as follows: the purchase or option price is $15,100.00 payable, as follows: . . . ."

On January 15, 1970, Mr. Adams notified the Swifts by letter of his intention to exercise the option. As in the present case, there was no tender of money or of a contract. On January 28, 1979, the plaintiff sent the defendants another letter, stating "[w]e have made arrangements for closing on the sale of your property, . . . on Monday, February 2, 1970 at 2:30 P.M." Counsel for the defendants replied with a letter "to advise you that the said option agreement was not properly exercised within the permissible period in accordance with the terms thereof, and therefore, pursuant to the applicable Tennessee law, the said option agreement has terminated."

The *Adams* court noted that the contract did not provide for the exercise of the option by the mere giving of notice, and construed it as requiring that the sale close within the option period. As the contract in the present case likewise does not provide for exercise of the option by the giving of notice alone, we must conclude that Mr. Wortham's letter of August 22, 1996 was not sufficient to exercise the option within the applicable period, and that the option expired by its own terms before it was exercised.

## III.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Dickson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
DAVID H. WELLES, SPECIAL JUDGE