CHAPMAN DRUG COMPANY

*v.*

MRS. SUE J. CHAPMAN.

(Knoxville, September Term (May Session), 1959.)

Opinion filed September 9, 1960.

Rehearing Denied October 7, 1960.

L. B. BOLT, JR., Knoxville, for appellant.

EGERTON, MCAFEE, ARMISTEAD & DAVIS, WILLIAM W. DAVIS, Knoxville, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The determinative question involved in this lawsuit is whether or not a lessor may void a lease with the lessee

for breaches of the lease claimed after the lessee has exercised the right of option to purchase under the lease by notice given to the lessor pursuant to the lease contract.

The suit was filed by Mrs. Chapman seeking to void a lease on certain property in the City of Knoxville with the Chapman Drug Company. The suit sought possession of the property and damages for waste allegedly committed by the lessee during its occupancy of the property.

On April 25, 1945, the appellee, Mrs. Chapman, leased to the appellant, Chapman Drug Company, for a period of fifteen years the property in question, beginning the said lease on May 1, 1945, and ending on midnight on April 30, 1960. The lease provided that the lessee should pay to the lessor $520 per month net rental, that is, the lessee was to pay the taxes, upkeep, insurance etc., and the net sum of $520 was to be paid the lessor for this property. It is provided in the lease that the Chapman Drug Company, the appellant, is granted an option to purchase the premises for a price of $64,000, which price was to be reduced by the following credits accruing during the term: (1) the amount of depreciation allowed by the Federal Government on the building during the term of the lease, plus, (2) the sum of $200 for each monthly installment paid during the term.

Paragraph 13 of the lease insofar as here applicable in granting this option provided:

"13. Provided all terms and conditions of this lease are fulfilled by the lessee without default, then upon termination of the lease the lessee is hereby granted the option to purchase the premises covered by this

lease for a gross consideration of $64,000.00, which gross consideration shall be reduced * * *'' as last above indicated.

Then as a part of this paragraph 13, but in a separate unnumbered paragraph, it being the last paragraph of the lease, it is provided:

"In order to exercise the option herein provided, lessee shall give to lessor notice of its determination to exercise the option not more than one year nor less than ninety days prior to the termination of the lease, or in the event the option is exercised by reason of the death of the lessor and her sister, Janie J. Saunders, by notice given to the legal representative of the survivor of lessor and Janie J. Saunders within ninety days after the qualification of such legal representative of the survivor."

For some fourteen years after the execution of this lease the relationship of the parties was pleasant, and no complaint had been received by the lessee from the lessor with reference to the maintenance of the building or any question with reference to any other terms in the lease. On July 2, 1959, within one year and more than ninety days of the termination date of the lease, notice was given by the lessee to the lessor that it desired to exercise its option to purchase the property according to the terms of the lease.

Twenty-seven days after this notice was given, to-wit, on July 29, 1959, the appellee through her attorney advised the appellant by letter that the lease had become void by reason of various breaches of the terms of the lease, to-wit: (a) that the lessee had abandoned the premises and left them vacant; (b) had failed to maintain and

repair the roof and exterior walls of the building as well as the interior of the building and had failed to keep same in good order and condition; (c) that the lessee had undertaken structural alterations and changes in the building without the written consent of the lessor; (d) that the lessee had failed to furnish paid receipts for property taxes assessed against the leased premises and had failed to deliver to the lessor policies of insurance on said premises, all in violation of various specifically alleged clauses in the lease.

It was alleged that these various defaults by the lessee were first learned by the lessor on July 15, 1959, or some two weeks after the lessor had received notice from the lessee of its intention of exercising the option in the lease. It was on July 29, 1959, that the lessor notified the lessee of the existence of these said defaults.

Two days after this notification the lessee replied to this notification and specifically denied each and every default, and said that it would continue to tender the rent when due and upon the expiration of the lease they would expect to exercise their option to purchase. Other letters which are attached to the bill, setting forth the estimate of a contracting firm as to the amount of damages etc., are all made exhibits to and a part of the bill (frankly, this is one of the best drawn bills so that all questions necessary for determination of the rights of the parties can be determined under the pleadings herein).

The appellant, defendant below, first moved to dismiss the bill for lack of equity on the face. Upon this motion being overruled the appellant demurred on the proposition that the lease between the parties had now been turned into a relationship of vendor and purchaser in-

508

stead of lessor and lessee by its exercise of said option to purchase. The demurrer specifically alleges that by the exercise of said option the equitable title of the property had passed to the defendant, Chapman Drug Company, subject to the payment of the agreed purchase price at the specified time.

■ The second ground of the demurrer is that in addition to the action seeking to cancel the lease it also was an action for waste and that said action was premature because the parties had now exercised their option to purchase and thus having done so said option was carried out according to the agreement of the parties and there would be no right of action for waste on the account of the lessor because the property by reason of the exercise of the option to purchase would pass to the lessee and thus there would be no waste. In view of the circumstances and facts as set forth by the bill and exhibits thereto the action was at least premature.

This demurrer was overruled and a discretionary appeal allowed. Able briefs have been filed, arguments heard and after many days of consideration of the authorities cited in the briefs and otherwise we have the matter for disposition.

Thus it is that the determinative question is frankly and fairly presented. This question is, does the unconditional exercise of the option to purchase as provided in the lease create a contract of purchase and sale, changing the relationship of the parties from that of landlord and tenant to that of vendor and purchaser? Does equitable title to the property pass to the Chapman Drug Company subject to the payment of the agreed purchase price at

the termination of the lease, the time specified for said payment in the lease?

The first question thus posed is answered in 32 Am. Jur. (Landlord and Tenant), Section 300, page 280, thus:

"When the option is exercised, the lease and all its incidents, express or implied, are blotted out of existence, and the relation of vendor and vendee created."

A number of authorities are cited for this statement. We have read them and are satisfied that these authorities support such a statement. There are different shades of facts in each of the authorities cited and others that we have found, but logic and common sense dictate the correctness of this statement.

This question is likewise answered in 51 C.J.S. Landlord and Tenant sec. 82 a, page 640, thus:

"Where the option to purchase is duly exercised by an election to purchase, the relation of landlord and tenant ceases and that of vendor and purchaser arises."

Likewise under this statement numerous authorities are cited. The advance sheets which are attached to these texts cite many authorities which consistently follow this reasoning. Of course none of the cases are on an identical state of facts, but they all support the statement.

The action herein upon which it is sought to avoid the option to purchase is based on waste. Such an action, that is of waste, is normally a tort action, but under the facts and circumstances here presented, and the way they are presented in this lawsuit, equity would take jurisdiction of such an action.

510

■ Waste is variously defined. A definition that we think applicable, and one that we like, is that "an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in its substantial injury." *Thayer v. Shorey*, 287 Mass. 76, 191 N.E. 435, 437, 94 A.L.R. 307. This is a good definition applicable to the situation here. Under such a definition if one purchased the real property on which they have committed waste, what right would the owner of the property at the time the waste is committed have to sue the lessee of that property when the lessee has paid the agreed purchase price for the property, which was agreed to in the option prior to the commission of the waste?

■ When the making of the contract pursuant to the lease for exercising the option is complete, and under this lease it is complete by giving the notice within not more than a year and not less than ninety days from the termination thereof, the land thereafter is clearly regarded in equity as the property of the vendee under the option to purchase subject to the rights of the vendor under the contract of purchase. *City Service Oil Co. v. Viering*, 404 Ill. 538, 89 N.E.2d 392, 402, 13 A.L.R.2d 1448. As said in the City Service case, supra, "It follows that, when the plaintiff in this case exercised its option to purchase by notice in writing served on the defendant, a complete and absolute contract was created binding upon the plaintiff to buy and the defendant to sell, thereby vesting the equitable ownership of the premises in the plaintiff. After that time the relation of landlord and tenant ceased to exist, and the rights of the parties must be determined upon the basis of a contract to sell and convey on one side and to purchase on the other."

It is true that the lease in this City Service case had a provision in it that if the option was exercised it would create a contract of sale. Such a provision is absent in the contract in the case under consideration here, but this fact would not change the law applicable hereto in the absence of a contract on the question, because the law is that the exercise of such an option changes the relationship of the parties.

There are many such cases from various and sundry jurisdictions over the United States, and as far as we can find, or have been cited, they all hold to the same legal proposition.

Of course, the contention here is that the lease had been violated in the particulars as set out heretofore and therefore, having thus been violated, the lease was void and the lessee had no right to exercise the option given in the lease. If these things had been brought to the attention or had been noticed by anything done about them prior to the time that the optionee exercised its right to make the option contract an effective engagement of sale and purchase, then obviously no right could be based or predicated under the lease to exercise the option. But any breach of the lease on the lessee's part, even if sufficient to justify the termination thereof, must be manifest by some clear and unequivocal act prior to the time of the determination to exercise the option. 35 C.J., page 1075, Section 248(3).

In *Gassert v. Anderson et al.*, 201 Minn. 515, 276 N.W. 808, 809, the Supreme Court of Minnesota held that where a tenant under the lease containing an option to purchase duly exercises an election to purchase the relationship of landlord and tenant immediately ceases and that of ven-

512

dor and purchaser arises so that the landlord cannot abro-
gate such right by thereafter undertaking to forfeit the
lease because of a past breach of covenant. This is the
general law on the question and sound in our judgment.
That Court said: "Unless and until he manifested his
intent to forfeit the lease 'by some clear and unequivocal
act' before the tenant put the option into operation the
contractual obligation created by the lease remained in
full force", citing 35 C.J., page 1075, Section 248(3).

■■ Normally when an option in a lease is thus exer-
cised the relationship of landlord and tenant ceases and
that of vendor and purchaser applies and thus under all
the cases we could find, and we have read several, the
rent ceases when the option is executed "unless there is
an express stipulation therefor." 35 C.J., pages 1041,
1042, Section 185(2). In the contract in the present case
the lease clearly gives an option and provides that it may
be exercised by the giving of notice of the desire to exer-
cise within one year from the termination of the lease
and not less than ninety days from its termination, but
the clear import of the lease is that in view of the terms
of the lease that the amount of the rent is to be applied
on the purchase price, the rent still shall be paid on up
until the termination of the lease and then the adjust-
ments between the parties as hereinbefore indicated are
to be made in arriving at what will then be due by the
optionee who has exercised his option to purchase. Thus
it is that when the optionee said in his letter that he would
continue to tender the rent as due this was in no way
saying the relationship of landlord and tenant still ex-
isted; this was merely carrying out the terms of the
agreement when he exercised the right of option given
in the lease.

In *Gassert v. Anderson,* supra, the Minnesota Court made this very apt statement:

"We think it is the duty of the court to sustain contract engagements when fairly made and openly arrived at. Courts should not, nor do they, lend aid or comfort to those who seek to defeat obligations so made. Mere translucent mists should not be permitted to stand in the way of accomplishing justice."

Along this same line and with the same thought back of it as expressed in the last quotation, we find that Mr. Gibson in his Suits in Chancery, 4th Ed., Section 43, page 60, says this:

"Equity heeds not forms, but strives to reach the substance of things; and to ascertain, uphold and enforce rights and duties which spring from the real relations and the actual transactions of the parties. Looking to the intent rather than to the form, whenever a penalty is designed merely to secure payment of a given sum of money, or the performance of some act, Equity will relieve the obligor from the penalty, upon his paying the debt, or the actual damages resulting from his default. So, if a lease has been forfeited for nonpayment of rent, or for breach of some, but not all the covenants contained in the lease, if the lessor can be adequately compensated for the breach of the contract, Equity will regard the forfeiture clause as merely a means of securing the observance of the contract, and a Court of Chancery will relieve from the forfeiture."

Of the many cases read by the writer of this opinion the case of *Keogh v. Peck,* 316 Ill. 318, 147 N.E. 266, 269, 38 A.L.R. 1151, is particularly in point and very interesting on all the questions here raised, and on a number of other

related questions which are not raised herein. It might not be out of place to say at this point that in practically all of the cases involving the questions now before us arise in suits for specific performance where an optionee has exercised a right under a lease and the optioner refuses to convey.

In this case (*Keogh v. Peck,* supra) a ninety-nine year lease was executed in 1900, giving the lessee the option to purchase the property at any time during the term of the lease when the tenant should give notice of his election to purchase—at least sixty days prior to the date fixed for the consummation of the sale. After this lease was executed the property in the neighborhood went down to where what was formerly a nice dwelling neighborhood went into a boarding house neighborhood and then subsequently progress, highways and streets came along and the neighborhood changed to rather valuable property, and it was then that the lessee decided to exercise his option to purchase. Of course, during that time the buildings that were on property had been demolished, business buildings built and the property had greatly enhanced in value. There were many defenses raised to this suit which was one for specific performance to perform the option under this lease. One of the contentions made, which is the same contention as made in the case now before us in an effort to void and cancel this lease, was that the lessees were guilty of waste and violations of the terms of the lease, and for that reason the lease had been voided and they couldn't have specific performance under the option. The Court had this to say on that question:

"Had Peck declared a forfeiture of the lease on the ground that the appellee had failed to keep the cove-

nants of the lease prior to the appellee's election to purchase, an entirely different question would have arisen; but at the time appellee gave notice of his election to purchase no forfeiture had been declared and the lease and the contract of purchase were both in full force and effect'', citing authorities from Kansas and Massachusetts, which we have examined and clearly support this statement.

This case is likewise direct authority for the quotations from American Jurisprudence and Corpus Juris Secundum, heretofore quoted. The appellee cites and quotes what we have heretofore quoted from American Jurisprudence and cites the case we have just been talking about from Illinois, but takes the position that this case likewise holds that prior to the end of the lease if the lessee has violated the terms then the lessor can enter and declare a forfeiture and declare the lease void and whatnot. There is no contention about this question here. The only question is whether they can do that after the optionee has exercised the right of option. This Illinois case and others we have cited and the logic and reason of the proposition is that after the optionee has exercised his right of option then they can't come for the first time and claim the lease is void in an effort to avoid this option contract which was made in the lease.

In the case before us it is clearly shown that over a period of fourteen years the lessor could have had access and raised these various questions that are raised herein in an attempt to void this lease, but that she did not do so until after the option to purchase was executed. This comes too late and the relationship of the parties by the exercise of this optional right under the terms of this

lease has now changed from that of landlord and tenant to that of vendor and purchaser, so any breach of the terms of the lease prior to the exercise of this option cannot now for the first time be brought in in an effort to void the terms of the option.

Thus we conclude that where the lease provided that notice be given prior to the end of the term of the right to exercise an option to purchase and such notice was given within the terms of the lease it is an acceptance of a continuing offer to sell and created a contract of sale which under the terms of this contract had a particular date set for its consummation, that is the ending of the lease, to-wit, April 30, 1960. The relationship of the parties changed upon the unconditional acceptance of the continuing offer to sell. For the reasons stated herein the decree of the Chancellor will be reversed and the demurrer sustained.

■ The parties to the contract herein were competent to contract and entered into this contract fairly and understandingly without fraud and for a consideration and thus it is that when parties thus contract the courts are not concerned with the wisdom or folly of their contract. We might ask ourselves this pertinent question. How is the contractor damaged by the contractee when the damage claimed here of waste is to the freehold, and when the contractee exercises his right of purchase given in this contract by purchasing the freehold for a price for the freehold which is agreed upon before any damage is done?

On Petition To Rehear.

There has been presented to us a courteous, forceful and dignified petition to rehear herein.

We are fully satisfied, after again reviewing the record, our opinion, briefs herein, and reading other authorities that the question now presented was fully answered in our original opinion.

The petitioner says in this petition to rehear that: "Your petitioner insists, however, that the real question for determination is whether or not the option to purchase in the lease *has in fact been exercised* by the lessee." The answer to this question is contained in the last paragraph of the lease, which is:

"In order to exercise the option herein provided, the lessee shall give to lessor notice of its determination to exercise the option not more than one year nor less than ninety days prior to the termination of the lease, * * *,"

The answer to this petition to rehear on the question said to have been overlooked by us is contained in the case cited by the petitioner on the petition to rehear of *Lake Shore Country Club v. Brand,* 339 Ill. 504, 171 N.E. 494, 502, in this language:

"By 'exercise of such privilege and option' the parties plainly referred to the time of election. The right to elect under an option contract is the right to convert an option into a binding promise, and an election is the act which so converts the unilateral contract into a bilateral one. The right of the optionee to elect continues for the full period of time unless prior to its expiration he surrenders or fails to comply with the option. The right of an election in an optionee is the right to bring the parties into an agreement binding upon each. Clearly, therefore, the exercise of the privi-

lege and option is the act which converts the option into a binding promise. The sufficiency of the election must be determined at the time of the exercise of such privilege and option and by the terms of the option contract itself. James on Option Contracts, sec. 839.''

In this Lake Shore case it is true that the court held that the option had not been exercised because of previous defaults which, of course, voided the lease contract, and in voiding it the option contract was likewise voided. In the case now before us though the factual situation is entirely different from that in the Lake Shore case. For reasons expressed in the original opinion, we held that this lease contract and likewise the option contract contained therein was not breached in effect prior to the time of the exercise of the option.

In *Snead v. Wood,* 24 Ga.App. 210, 100 S.E. 714, 715, 101 A.L.R. 1433, 1439, the Georgia Court held:

''* * * 'the mere giving of a timely unconditional notice' that the optionee 'had elected to purchase the land at the price on the terms stated in the option contract' was an exercise of an option contained in a lease which provided that the lessee should have the 'option' to purchase the property 'at the expiration' of the lease for a specified sum, * * *''

The court further said:

''* * * The 'exercise', of an option to purchase is merely the election of the optionee to purchase. The elements of the act commonly called 'exercising the option' are: First, the decision of the optionee to purchase the property under the terms of the option; and, second, the communication of this decision to the op-

tionor within the life of the option. An election * * * involves merely the giving of notice thereof to the optionor."

"* * * if the option contains no stipulation that the whole or any part of the purchase price must be so paid, and provides for notice merely, and contemplates that the price shall be paid after the act of election, when the deed is tendered, the option can be legally exercised without the payment or tender of any part of the purchase price."

The Pennsylvania Court in *Atlas Portland Cement Co. v. Am. Brick & Clay Co.,* 280 Pa. 449, 124 A. 650, 652; 101 A.L.R. 1438, has in very unmistakable terms answered the question as posed and as is set forth by the quotation from the lease above in this language:

"Acceptance in writing was the only thing necessary to make a binding contract of sale; * * *."

In *United Farmers' City Market, Inc. v. Donofrio et al.,* 43 Ariz. 35, 29 P.2d 144, 147, that court said:

"Such acceptance completes the contract, exhausts the option, and estops the purchaser from subsequently repudiating it or choosing the other alternative. *Castle Creek Water Co. v. Aspen,* 10 Cir., 146 F. 8, 8 Am.Cas. 600. This is equally true of a lease with option to purchase. *Monihon v. Wakelin,* 6 Ariz. 225, 56 P. 735; *Swanston v. Clark,* 153 Cal. 300, 95 P. 1117."

We think that what we said in the original opinion and what we have said herein is a complete answer to the propositions as raised by the appellee herein. The result is that the petition to rehear must be denied.