IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2001 Session

## EILEEN WILSON DUNLOY v. BRIAN EDWARD DUNLOY

**Appeal from the Chancery Court for Marshall County**
**No. 8684     Lee Russell, Chancellor**

---

**No. M2000-03103-COA-R3-CV - Filed May 27, 2003**

---

This appeal involves a dispute over the interpretation of a provision in a marital dissolution agreement dealing with the method of distribution of the husband's defined benefit plan. The trial court interpreted the provision as calling for deferred distribution pursuant to the coverture fraction method. The husband appeals arguing that the net present value method, rather than the deferred distribution method, is proper. We reverse the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

PATRICIA J. COTTRELL, J. delivered the opinion of the court, in which JOHN J. MADDUX, JR., SP. J., joined. WILLIAM B. CAIN, J. filed a dissenting opinion.

James G. Martin, III and Gregory D. Smith, Nashville, Tennessee, for the appellant, Brian E. Dunloy.

Jeffrey L. Levy, Nashville, Tennessee, for the appellee, Eileen Wilson Dunloy.

**OPINION**

Brian E. Dunloy and Eileen Wilson Dunloy[1] were divorced on the grounds of inappropriate marital conduct on April 29, 1994, after twenty-two years of marriage. The Final Decree of Divorce incorporated a Marital Dissolution Agreement ("MDA") executed by the parties on April 28, 1994. This case involves the interpretation of the MDA concerning the distribution of certain retirement benefits and a Qualified Domestic Relations Order ("QDRO"). The MDA provides as pertinent to the issue before this Court:

> 34.     Mr. Dunloy agrees that his account balance, as of April 29, 1994, with The Savings Plan of the Saudi Arabian Oil Company (Vanguard Funds account #462-78-

---

[1]Mrs. Dunloy has since remarried becoming Mrs. Turowski but for convenience will be referred to as Mrs. Dunloy.

8754) shall be divided equally between the parties. Mr. Dunloy hereby assigns to Mrs. Dunloy one-half (½) of his account balance in said Plan as of April 29, 1994. The division of Mr. Dunloy's account balance with The Savings Plan of the Saudi Arabian Oil Company as of April 29, 1994 shall be further effectuated through the entry of a Qualified Domestic Relations Order.

35.    Mr. Dunloy agrees that his account balance, as of April 29, 1994, with The Retirement Income Plan of the Saudi Arabian Oil Company, net of current off-sets value at retirement in the approximate amount of $32,326.48 shall be divided equally with Mrs. Dunloy. Mr. Dunloy hereby assigns to Mrs. Dunloy one-half (½) of his account balance with The Retirement Income Plan of the Saudi Arabian Oil Company, net of current off-sets value at retirement in the approximate amount of $32,326.48. The division of Mr. Dunloy's account balance, net of off-set value at retirement, shall be further effectuated through the entry of a Qualified Domestic Relations Order.

About a year after the decree was entered, the parties entered into a QDRO with regard to the Savings Plan referred to in paragraph 34, which is a defined contribution plan, without difficulty, and the order was entered by the trial court. Problems, however, arose with regard to a QDRO for the Retirement Income Plan referenced in paragraph 35. After several years of unsuccessful negotiation, Mrs. Dunloy filed a Motion to Enter a Qualified Domestic Relations Order with the trial court. Mr. Dunloy insisted upon a QDRO using the net present value approach, and Mrs. Dunloy insisted upon a deferred distribution ("piggyback" or "coverture fraction") approach. The conflict between the parties centered around the fact that Mrs. Dunloy would receive far more money from the benefits if the deferred distribution method were used as opposed to the net present value approach urged by Mr. Dunloy.[2]

Both parties retained experts to assist in the resolution of the dispute. Mrs. Dunloy's expert, Mr. Guyton, is an actuary who works in the area of employee benefits specializing in defined benefit plans. Mr. Guyton opined that the proper form of the QDRO is the deferred distribution method. Mr. Dunloy retained J. Michael Yopp, an attorney specializing in the areas of taxation, estates, employee benefits, and partnerships. Mr. Yopp opined that the net present value method is the proper method.

If the net present value method were used, Mrs. Dunloy's portion would be treated as though Mr. Dunloy had terminated his employment as of the date of divorce. Under the deferred distribution method, the court would retain jurisdiction and use a coverture fraction, typically defined as the number of years the spouses were married while participating in the plan, divided by the total

---

[2]According to the record, applying Mr. Dunloy's proposed "frozen as of the date of the divorce" approach would result in Mrs. Dunloy receiving an expected monthly benefit upon Mr. Dunloy's retirement at age sixty of $565. If she chose a lump sum at that time it would be approximately $60,000. Adopting the deferred distribution approach proposed by Mrs. Dunloy she would receive a monthly benefit at Mr. Dunloy's retirement at age sixty in the amount of $1,087 per month. If she chose a lump sum benefit at the time of Mr. Dunloy's retirement it would be $161,702.

number of years that Mr. Dunloy participated in the plan, to determine the proper portion of the benefit to be awarded to each party.

After hearing oral argument and expert witness testimony, the trial court found that the coverture fraction method should be used to value Mrs. Dunloy's interest in Mr. Dunloy's retirement plan. The order stated:

It is, therefore ORDERED, ADJUDGED and DECREED that the coverture fraction method to value Mrs. Dunloy's share of Mr. Dunloy's retirement shall be utilized and the qualified Domestic Relations Order tendered on behalf of Mrs. Dunloy should be entered by the Court to implement the terms of paragraph 35 of the Marital Dissolution Agreement incorporated into the Final Decree of Divorce entered in this cause on the 29th day of April, 1994.

Mr. Dunloy appealed, and the sole issue for review is whether the trial court erred in entering a QDRO based on the coverture fraction method. Ordinarily the "choice of valuation method" remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances. *Cohen v. Cohen*, 937 S.W.2d 823, 831 (Tenn. 1996). However, the parties herein agreed on the distribution and valuation method, and our task is to determine the intent of the parties with regard to the division of the retirement income plan from the words the parties used in paragraph 35 of their MDA.

## I. Standard of Review

"The interpretation of a written agreement is a matter of law and not of fact, therefore, our review is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law." *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998) (citing *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993)). A marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings that will be construed and enforced as other contracts are. *Gray*, 993 S.W.2d at 63. Thus, the interpretation of a written marital dissolution agreement is a matter of law, and our review is *de novo* on the record with no presumption of correctness. *Id.*

This Court has stated the following with regard to the interpretation of MDA's:

When contracting parties have reduced their agreements to writing, their rights and obligations will be governed by the terms of their written contract. *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 461 (Tenn. Ct. App. 1994). The courts must take a position of neutrality with regard to the parties, *Hillsboro Plaza Enters v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993), and must not concern themselves with the wisdom or folly of the contracts. *Chapman Drug Co. v. Chapman*, 207 Tenn. 502, 516, 341 S.W.2d 392, 398 (1960); *Brooks v. Networks of Chattanooga, Inc.*, 946 S.W.2d 321, 324 (Tenn. Ct. App.

1996).  Thus, the courts must enforce the parties' agreement according to its plain terms, *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975), and must be careful not to rewrite an agreement under the guise of construing it.  *Duvier v. Duvier*, 1995 Tenn. App. LEXIS 494, No. 01 A01-9311-CH-00506, 1995 WL 422465, at *3 (Tenn. Ct. App. July 19, 1995) (No Tenn. R. App. P. 11 application filed).

The language in a marital dissolution agreement is of central importance.  Unlike the documents thrust before the courts in other types of contract disputes, marital dissolution agreements are neither pre-printed form documents nor the common boilerplate forced on consumers of goods and services at the point of sale.  For the most part, they come closer to being contracts in the classic sense–specific language hammered out at close range by negotiating parties with keenly felt competing interests.  Divorcing parties who decide to use marital dissolution agreements want their agreements to say what each party is expected to do now and in the future, and thus both parties contribute or insist on particular language to achieve that end.  Thus, the courts must focus on the words chosen by the parties rather than the parties' separate and subjective intentions.

*Allman v. Allman*, No. M1997-00251-COA-R3-CV, 2000 Tenn. App. LEXIS 766, at *8-*9 (Tenn. Ct. App. Nov. 22, 2000) (no Tenn. R. App. P. 11 application filed).  Consequently, we must review the MDA at issue herein in order to determine what the language chosen by the parties means, specifically in regard to the "account balance" language appearing in paragraph 35 of the MDA and how that language affects the determination of Mrs. Dunloy's percentage of Mr. Dunloy's defined contribution plan.

## II.  Types of Pension Plans

Generally, there are two types of pension plans, a defined contribution plan and a defined benefit plan.  Mrs. Dunloy's expert, Mr. Michael Guyton, testified as to the differences between the two types of pension plans:

There are basically two types of tax-qualified pension plans.  The one category is called defined contribution plans and the other category is defined benefit plan.

A defined distribution plan you've heard of them as 401(k) plans, profit-sharing type plan.  And as the name implies, there's a defined contribution amount that goes in a separate account, is maintained for each employee in those plans, so at any time you know how much they have accumulated in their account, and each year the employer contributes to those accounts interest earnings on the funds that they're investing and it's credited to those accounts.  So it's like a savings account basically.

The defined benefit plan is a promise made to employees that if they reach retirement

4

or early retirement, that a benefit would be paid to them. And usually it's based on a formula, based on years of service, based on compensation to determine the amount that they would be paid at the time of retirement or separation of employment.

The parties agree that the retirement plan at issue in paragraph 35 is a defined benefit plan and is vested. Further, the defined benefit plan at issue is back loaded, which means that the later years of employment receive extra weight in the formulation of the retiree's benefit.

### III. Valuation of Mr. Dunloy's Defined Benefit Plan

The parties were able to reach agreement regarding paragraph 34 of the MDA covering a section 401(k) deferred compensation plan by assigning fifty percent of the total account balance as of the date of the divorce to Mrs. Dunloy as her separate property together with all accumulations thereon until distribution, with Mrs. Dunloy having the right "to receive her benefits at the earliest date at which the Participant could elect to receive a distribution in accordance with the terms of the Plan, or earlier if permitted by the Plan or applicable law." Thus, the parties had no trouble interpreting the MDA's directive that Mr. Dunloy assign "one-half (½) of his account balance" as of the date of the divorce.

The parties were unable to agree, however, on the terms of a QDRO with regard to Mr. Dunloy's Retirement Income Plan, which is the subject of paragraph 35 of the MDA, which also included the language that Mr. Dunloy hereby assigns to Mrs. Dunloy "one-half (½) of his account balance."

Mr. Dunloy argues that the net present value approach is the proper method for valuing the defined benefit and Mrs. Dunloy argues that the deferred distribution method is what the parties intended by the language in paragraph 35 of the MDA. In *Cohen v. Cohen*, 937 S.W.2d 823, 831 (Tenn. 1996), our Supreme Court explained the two methods of valuation and distribution of pension interests available under Tennessee law, in the context of a judicial award:

> Most courts use one of two techniques. *In re Marriage of Brown*, 544 P.2d at 576; *Gallo v. Gallo*, 752 P.2d at 54; *Janssen v. Janssen*, 331 N.W.2d at 755. The first approach, known as the present cash value method, requires the trial court to place a present value on the retirement benefit as of the date of the final decree. *Kendrick v. Kendrick*, 902 S.W.2d at 927. To determine the present cash value, the anticipated number of months the employee spouse will collect the benefits (based on life expectancy) is multiplied by the current retirement benefit payable under the plan. *Gallo v. Gallo*, 752 P.2d at 54. This gross benefit figure is then discounted to present value allowing for various factors such as mortality, interest, inflation, and any applicable taxes. *Id. See also In re Marriage of Grubb*, 745 P.2d at 666; *In re Marriage of Hunt*, 397 N.E.2d at 519; *Deering v. Deering*, 437 A.2d at 891. Once the present cash value is calculated, the court may award the retirement benefits to the employee-spouse and offset that award by distributing to the other spouse some

5

portion of the marital estate that is equivalent to the spouse's share of the retirement interest. *Gallo v. Gallo*, 752 P.2d at 54. The present cash value method is preferable if the employee-spouse's retirement benefits can be accurately valued, if retirement is likely to occur in the near future, and if the marital estate includes sufficient assets to offset the award. *Kendrick v. Kendrick*, 902 S.W.2d at 927; *Gallo v. Gallo*, 752 P.2d at 54.

In other circumstances in which the vesting or maturation is uncertain or in which the retirement benefit is the parties' greatest or only economic asset, courts have used the "deferred distribution" or "retained jurisdiction" method to distribute unvested retirement benefits. This method has distinct advantages when the risk of forfeiture is great. *Kendrick v. Kendrick*, 902 S.W.2d at 927. Under such an approach, it is unnecessary to determine the present value of the retirement benefit. Rather, the court may determine the formula for dividing the monthly benefit at the time of the decree, but delay the actual distribution until the benefits become payable. *In re Marriage of Brown*, 544 P.2d at 567; *Gallo v. Gallo*, 752 P.2d at 55; *Deering v. Deering*, 437 A.2d at 891; *Janssen v. Janssen*, 331 N.W.2d at 753. The marital property interest is often expressed as a fraction or a percentage of the employee spouse's monthly benefit. The percentage may be derived by dividing the number of months of the marriage during which the benefits accrued by the total number of months during which the retirement benefits accumulate before being paid. *Kendrick v. Kendrick*, 902 S.W.2d at 927.

One advantage to the deferred distribution method is that it allows an equitable division without requiring present payment for a benefit not yet realized and potentially never obtained. *Gallo v. Gallo*, 752 P.2d at 55. Another advantage to the approach is that it equally apportions any risk of forfeiture. While a disadvantage may be that the approach requires a trial court to retain jurisdiction to oversee the payment, the entry of an order awarding a certain percentage of the benefits at the time of payment should lessen the administrative burden of the court . . . .

*Cohen*, 937 S.W.2d at 831.

However, in the instant case, it is not within our purview to determine which method of valuing the defined benefit plan is the more appropriate, more advantageous, or more equitable; we are merely to interpret the intent of the parties as expressed in the language of the MDA. We note this was not an irreconcilable differences divorce wherein the court has the responsibility to approve the MDA as equitably distributing the parties' property. Tenn. Code Ann. § 36-4-103(3)(b). Even in that situation, if an MDA is ambiguous, "it is the intent of the parties that is relevant, not the intent of the trial judge." *Ahern v. Ahern*, 15 S.W.3d 73, 81 (Tenn. 2000).

A marital dissolution agreement is essentially a contract between a husband and wife in

contemplation of divorce proceedings. *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993); *Gray*, 993 S.W.2d at 63. Such a contract is enforceable. *Holt v. Holt*, 995 S.W.2d 68, 72 (Tenn. 1999). "A property settlement agreement between a husband and wife is 'within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect." *Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. Ct. App. 1990) (quoting *Matthews v. Matthews*, 24 Tenn. App. 580, 593, 148 S.W.2d 3, 11-12 (1940)). Where the MDA or property settlement is incorporated into the decree of the court, the agreement with regard to division of property does not lose its contractual nature. *Gray*, 993 S.W.2d at 64; *Moore v. Moore*, No. 01-A-01-9708 -CV-00444, 1998 Tenn. App. LEXIS 831, at *5 (Tenn. Ct. App. Dec. 8, 1998) (no Tenn. R. App. P. 11 application filed) (citing *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975)).

Although both parties maintain that paragraph 35 is not ambiguous, each presented expert testimony regarding the proper interpretation of the language. The experts agreed the term "account balance" was not one appropriate to a defined benefits plan. While the 401(k) plan distributed pursuant to paragraph thirty-four of the MDA had an "account balance" as of April 29, 1994, there is no such thing as an "account balance" in a retirement income plan such as the one involved in paragraph 35 of the MDA.

Mr. Yopp testified that he would interpret the term "account balance" used by the parties in paragraph 35 to mean "accrued benefit." When asked his opinion as to what type of QDRO was required by paragraph 35 he responded that his interpretation was that ". . .you had to calculate what it was today, and that value was fixed as of April 29, 1994."

Mrs. Dunloy's own expert, Mr. Guyton, acknowledged that he would have reasonably concluded that the term "account balance" as used in the MDA meant "accrued benefit." If the term "accrued benefit" is substituted for "account balance," the MDA requires that the retirement income plan be divided under the present value method. Mr. Yopp explained, "Account balance means a sum certain and the only way you can calculate and have a sum certain is to do a net present value calculation."

Although the term "account balance" may not, according to the experts, clearly fit a defined benefits plan, the parties used that term, and this court must presume the parties intended something by its use. We find that the most logical conclusion, based on the words employed in paragraph 35 is that the parties used the term "account balance" to mean a sum certain amount as of the date specified. The most likely description of that sum certain is the accrued benefit. This interpretation is supported by other language of paragraph 35 that refers to a specific amount accrued as of a specific date. For example, Mr. Dunloy agreed that "his account balance, as of April 29, 1994, . . . shall be divided equally with Mrs. Dunloy." Further, he "hereby assigns to Mrs. Dunloy one-half (1/2) of his account balance," referring to the balance as of April 29, 1994.

7

The deferred distribution method does not calculate the value of the benefit; it distributes the portions of the benefits, whatever their value, to be paid in the future. The deferred distribution method does not involve a present assignment of any specific amount; it entitles the recipient to a portion of benefits when they are received in the future. Therefore, we interpret the language used by the parties in paragraph 35 of their MDA as inconsistent with any intent to use the deferred distribution method and consistent with an intent to use the net present value method.

Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion. The costs of appeal are taxed against the appellee, Eileen Wilson Dunloy, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE