IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 19, 2007 Session

**TOWE IRON WORKS, INC., and DAVID L. TOWE, SR., v. DONALD W. TOWE, SR., SHIRLEY F. TOWE, RICHARD L. TOWE, SR., JEWEL M. TOWE, and CAROLYN E. McMURRAY, Personal Representative of the Estate of WILLAYNE TOWE and Trustees of any Trust thereunder**

**Direct Appeal from the Chancery Court for Knox County**
**No. 161807-1     Hon. John F. Weaver, Chancellor**

**No. E2006-01971-COA-R3-CV  - FILED AUGUST 22, 2007**

In this action to enforce an option to purchase contained in a lease between plaintiff/lessee and the children of the deceased lessor, the Trial Court, while finding the terms of the lease had been breached by the lessee, held that the plaintiff had properly exercised the option to purchase the property.  Defendants have appealed and we reverse the Judgment of the Trial Court and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

D. Scott Hurley and Ryan N. Shamblin, Knoxville, Tennessee, for appellant, Carolyn McMurray.
Lawrence E. Ault, Knoxville, Tennessee, for appellants, Donald W. Towe, Sr., Shirley F. Towe, Richard L. Towe, Sr., and Jewell M. Towe.

Raymond E. Lacy, Knoxville, Tennessee, for appellee, Towe Iron Works, Inc.
Farrell A. Levy, Knoxville, Tennessee, for appellee, David L. Towe, Sr.

# OPINION

## Background

Towe Iron Works, Inc., (plaintiff) brought this action on July 27, 2004, against Donald Towe, Sr., Shirley Towe, Richard Towe, Sr., Jewel Towe, and Carolyn McMurray, personal representative of the Estate of Willayne Towe. The Complaint alleged that Lawrence Towe, Sr., owned property at 2511 Mynderse Avenue and 2435 Western Avenue in Knoxville, and had leased the property to plaintiff on December 31, 1996. The Commercial Lease was attached as an Exhibit to the Complaint, with the initial term of the lease being five years, ending December 31, 2001. The Complaint averred the Lease was renewed by exercise of the option in Section 3, for another five years, ending on December 31, 2006.

The Complaint further stated the lease provided for monthly payments of $3,000.00 to Lawrence Towe, Sr., but he requested an additional $2,000.00 per month in advance rent, such that the total monthly payments were $5,000.00. Further, that Section 19 of the Lease gave plaintiff the option to purchase the property for $450,000.00, so long as the Lease had not been previously terminated, and so long as plaintiff had complied with all the terms and conditions of the Lease.

Plaintiff averred that on December 31, 1996, Lawrence Towe, Sr., conveyed a 7.128% interest in the subject property to each of his five children, subject to the terms of the lease, and that Lawrence Towe, Sr., died on September 19, 2001. Pursuant to the terms of his Will, the remaining 64.36% interest was conveyed in equal shares to his three living sons. (His son Lawrence, Jr., predeceased him, leaving his wife, Willayne Towe, as his only heir - Willayne Towe is now also deceased.)

Plaintiff asserted that it exercised the option to purchase the property on July 26 and 27, 2004, by hand delivery of notice to all of the heirs/successors, and at that time, the lease had not been terminated, and plaintiff had complied with all obligations as required by the lease.

The Commercial Lease provides that plaintiff will pay rent of $3,000.00 per month, and shall pay the property taxes, utilities, insurances, etc. Section 19 provides that plaintiff can purchase the property on or after January 1, 1997, for $450,000.00 "on the condition that this Lease shall not have been terminated previously and that Lessee has observed and complied with all terms and conditions of this Lease required of Lessee, up to the time of the exercise of this option and the payment of the purchase price, in the manner provided."

The Complaint was amended on July 27, 2004, adding Steven Albright as a defendant, as co-personal representative of the estate of Willayne Towe.

Defendants Donald Towe, Sr., and wife Shirley Towe, and Richard Towe, Sr., and wife Jewel Towe, answered with Counter-Complaint and Third-Party Complaint. They denied any knowledge of advance rent payments made to Lawrence Towe, Sr., denied that plaintiff had

complied with its obligations under the Lease, and denied that plaintiff could have properly exercised the option to purchase. Defendants raised the affirmative defenses of failure to state a claim, unclean hands and breach of the lease.

In their Counter-Complaint, defendants sought a declaration that the lease option was void due to plaintiff's failure to comply with the terms of the lease. Defendants further sought a declaration, inter alia, that the lease was in breach and that the option to purchase was void due to that fact.

The personal representative of the Estate of Willayne Towe answered, denying any knowledge of additional lease payments made to Lawrence Towe, Sr., and that the lease had been breached by the lessee. They further sought a declaration that the lease was void and sought payment of rent due.

The Trial Court ultimately denied competing Motions for Summary Judgment and the case proceeded to trial. Following a protracted evidentiary hearing, the Court rendered a bench opinion and found that the lease containing the option to purchase was part of an estate planning package for Lawrence Towe, Sr., prepared by an attorney with special expertise in the area. The Court said that Lawrence Towe, Sr., executed a quitclaim deed giving a percentage interest in the property to each of his children, subject to the lease, as part of his estate planning, and that Lawrence Towe, Sr., and his children were to place the lease and quitclaimed property into a family limited partnership, along with the assets of Lawrence Towe, Sr., and that each sibling was to contribute $400.00 per month to the partnership during Mr. Towe's life. The Court found that Mr. Towe was to receive $5,000.00 per month in income from the partnership, which consisted of $3,000.00 per month lease payments from the lease, and $2,000.00 per month from the siblings' payments. The Court found that the lease and the quitclaim were executed, but Mr. Towe then lost interest in carrying out the rest of the estate plan. The Court held that none of the siblings paid any payments to the partnership, but Towe Iron paid $3,000.00 per month in rent to the lease, plus another $2,000.00 per month to Mr. Towe "to keep him appeased."

The Court found that Towe Iron was originally started by Lawrence Towe, Sr., and his son Richard, and that the other siblings eventually became employed there as well, and that as time passed, Lawrence, Jr., Richard, and Frances all retired, and their stock was repurchased by the company. The Court found that after 1993, David and Donald were the sole shareholders, and Donald sold his stock back to the company after this action began.

The Court found that in 1988, Lawrence Towe, Sr.'s wife passed away, and he remarried later that year, and that in 1996, the children became concerned that his wife was taking his assets, and considered a conservatorship, but a doctor found him to be competent. Further, that Mr. Towe and his second wife began having marital problems, and Mr. Towe expressed concern to his son, David, about his wife taking funds. The Court found that Lawrence Towe, Sr., had David's name added to his $100,000.00 bank account. The Court found that when Mr. Towe and his wife reconciled, David removed the money from the account and had it put in an account solely in David's name, and would not return control of the money to his father despite his father's request.

-3-

Shortly thereafter, the Court said Lawrence Towe, Sr., employed an attorney to help him regain his funds, and eventually the funds of about $100,000.00 were turned over to the attorney pursuant to a written designation of agent agreement prepared by Towe Iron's counsel. The Court found that David became trustee of a trust set up for Lawrence Towe, Sr.'s benefit, which was also to preserve his assets for his children. The Court found that the attorney, Matt Frere, was David's agent with the authority and responsibility to receive the money in the bank, plus the rent checks from Towe Iron, for the use and benefit of Mr. Towe, and that Frere also represented Mr. Towe in the execution of the quitclaim deed and lease, no one had an issue with the execution of the quitclaim deed, but defendants had attacked the execution of the lease, which took place at basically the same time.

The Court found that Lawrence Towe, Sr., had independent legal counsel who represented him in the execution of the lease, and who reviewed the lease and discussed the terms with him. The Court found that Mr. Towe executed the lease and the quitclaim deed at the same time, along with his second wife and his attorney, in the privacy of his own home. The Court discounted any testimony from the defendants suggesting that Mr. Towe did not know what he was signing at the time, and that Mr. Towe was competent.

Regarding undue influence, the Court found that while David communicated with his father regarding the lease, that they also communicated through their attorneys, and that David was not in a position to isolate his father from his wife or his other children. The court concluded that any presumption of undue influence had been overcome by clear and convincing evidence.

Regarding the issue of whether the option could not be exercised because Towe Iron had breached the lease, the Court found that Towe Iron stopped making rental payments when Mr. Towe, Sr., died on September 19, 2001, but that Towe Iron took the position that of the $5,000.00 per month payments it had been making, $2,000.00 constituted advance rent. The Court found that no one had ever told the decedent or his counsel that any part of the $5,000.00 was for advance rent. Rather, David Towe simply caused the payments to be made to appease his father and keep him from being upset. The Court said that during negotiations between Towe Iron's counsel and Mr. Frere, it was represented to Lawrence Towe, Sr., that he would receive $5,000.00 per month, and that the "Designation of Agent" document reflected this.

The Court further found that neither David nor anyone else ever informed Lawrence Towe, Sr., that the $5,000.00 per month included $2,000.00 of advance rent, or that he would have to repay or credit Towe Iron for said advance rent. The Court found that none of Towe Iron's records reflected prepaid rent amounts, and that David testified that Towe Iron had no knowledge that it could possibly offset the extra rent until receiving advice from counsel after Mr. Towe's death.

The Court found the evidence established that Towe Iron was in breach of the lease upon the failure to pay rent after September 2001, and that the evidence established that the siblings

inquired about the rent payments, but took no action to terminate the lease before the option was exercised. The Court then concluded, in reliance on *Chapman Drug Co. v. Chapman*, 341 S.W.2d 392 (Tenn. 1960), that Towe Iron did not forfeit the option, but could cure its breach by paying all of the siblings the $3,000.00 per month rent due from October 2001 to July 2004, along with prejudgment interest. The Court further found that Towe Iron was also liable to the siblings for the option purchase price of $450,000.00, with monthly payments beginning as of July 2004, along with pre- and post-judgment interest thereon.

The Court entered a Final Judgment on March 24, 2006, incorporating its bench Opinion by reference.

An appeal was perfected, and these issues are before the Court:

1.  Whether the Trial Court erred in finding that plaintiff could exercise the option in July 2004, when the lease expired on December 31, 2001?

2.  Whether the Trial Court erred in failing to find that the lease had been terminated for cause prior to exercise of the option?

3.  Whether the Trial Court erred in relying upon the case of *Chapman Drug Co. v. Chapman* to relieve plaintiff of its forfeiture?

4.  Whether the Trial Court erred in the use of its equity powers to relieve plaintiff of the duty to abide by the terms of the lease?

5.  Whether the Trial Court erred in finding that plaintiff rebutted the presumption that the lease was procured by undue influence?

6.  Whether the Trial Court erred in not permitting plaintiff to receive credit or set off the overpayment made by plaintiff?

**Discussion**

We hold that the evidence does not preponderate against the Trial Court's finding of fact, that the lease had been breached by the lessee, and concur with this finding by the Chancellor. However, conclusions of law are reviewed *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d).

The determinative issue on appeal is whether the plaintiff properly exercised an option to purchase the property contained in the original lease. Defendants argue that the lease expired on December 31, 2001, and could not have been automatically renewed according to its terms because plaintiff was in breach for failure to pay rent, as found by the Trial Court. Section 3 of the lease provides that its term would expire on December 31, 2001, and that the lessee could

automatically renew for three successive five year terms "if the Lessee is not then in default". Section 27 of the lease is entitled "Attachment, Bankrupt, Default" and states that the lessor or his successors may terminate the lease and enter upon the premises and repossess them without notice, if the lessee is in arrears for the payment of rent for a period of thirty days, as well as for other specified bases that constitute default.

The lease unambiguously provides that it cannot be automatically renewed if the lessee is in default, and the nonpayment of rent is a stated basis for default. The Trial Court clearly held that Towe Iron "became in breach of the lease upon the failure to pay rent around the decedent's death on September 9, 2001.", but allowed the plaintiff to cure the breach under the authority of *Chapman Drug Co.* case, by paying the rent for the remainder of the lease term, as well as the rent for the ensuing years before plaintiff's attempt to exercise the option contained in the original lease.

The *Chapman* case is not authority for the action taken by the Trial Court.

In *Chapman,* the lessor leased commercial property to the lessee for a term of fifteen years, and the lease provided that the lessee was to pay rent, taxes, insurance, etc. *Id.* The lease also contained requirements that the premises be kept maintained and repaired, and not be left vacant. The lease further provided the lessee an option to purchase the property, so long as notice was given more than 90 days but less than one year from the date the lease would terminate, and "provided all terms and conditions of the lease are fulfilled by the lessee without default". The Court found that for 14 years the relationship of the parties was pleasant, and no complaints were made by the lessor. The lessee then sent timely and proper notice that it wished to exercise the option to purchase, but the lessor notified the lessee that there had been breaches of the terms of the lease, in that the building was not kept in good repair and had been left vacant.

The Supreme Court held that the lessor's attempt to void the lease was not proper, and noted that the lessor's complaints were based on waste, and stated, "if one purchased the real property on which they have committed waste, what right would the owner of the property at the time the waste is committed have to sue the lessee of that property when the lessee has paid the agreed purchase price for the property, which was agreed to in the option prior to the commission of the waste?" *Id.* at 396. The *Chapman* case essentially held that failure to perform the conditions of the lease was merely for the benefit of the property, and not the lessor. The *Chapman* case is an example of the cases falling in the narrow exception to the general rule where equitable relief will be granted. The overwhelming weight of authority follows the general rule that an option to purchase under the terms of a lease may not be exercised where the lessee has breached or defaulted under the lease agreement. For a collection of cases on the issue, *see* 10 ALR 2d, 884 ANNO - Tenant's Option to Purchase and 53 ALR 3d, 435 - Lessee's Breach of or Default Under Lease Agreement as Affecting his Rights in Respect of Option to Purchase Under the Lease.

In this case, the Court found that Towe Iron was in default for failure to pay rent as of October 2001. The Court also found the siblings inquired about the payment of rent, but did not take any action. What the Court's findings and conclusions do not address, however, is the fact that

-6-

the lease, by its express terms, could not be renewed if it was in default. While the Trial Court found the lease to be in default in September/October 2001, it held that the lease could be renewed, but the lease expressly states that it expired on December 31, 2001, years before the plaintiff sought to exercise this option. While the lease could not be renewed pursuant to its terms due to plaintiff's default for nonpayment of rent, the lease further provided that if the plaintiff holds over upon expiration of the term of the lease, "such holding over shall not be deemed to operate as a renewal or extension of this lease, but shall only create a tenancy from month to month which may be terminated at will at any time by the Lessor." Since the expiration of the lease on December 31, 2001, plaintiff had a month to month tenancy.[1] There is no question that a lease must be construed to give effect to the intention of the parties, as reflected in the language of the lease. *McNeil Real Estate Mgmt., Inc., v. Seiler*, 1995 WL 420008 (Tenn. Ct. App. July 17, 1995). When the language in the lease is not ambiguous, it "must be construed according to the natural and ordinary meaning of its terms." *Id.* Moreover, it has been held that through a lease agreement, the parties can "contract out of" an adverse common law rule/requirement. *See Cain Partnership Ltd. v. Pioneer Inv. Services Co.*, 914 S.W.2d 452 (Tenn. 1996); *White v. Jenkins*, 2002 WL 31106423, *2 (Tenn. Ct. App. Sept. 23, 2002).

The Trial Court's reliance on *Chapman* was misplaced for yet another reason. In *Chapman*, the Court said that the breach should have been brought to the attention of the lessee before the option was exercised. In this case, the Court found that the siblings had inquired about the rent due before the option was exercised, which was admitted. Thus, the breach was brought to the lessee's attention before the option was exercised, and moreover, the breach alleged in *Chapman* led the Court to question what harm this would be to the lessor when the lessee was purchasing the property at a price agreed upon as fair before the waste was committed. *Id.* at 396. Here, the breach was for nonpayment of rent, which is clearly not an equitable matter, and has been recognized as depriving the landlord of a "significant inducement to the making of the lease" justifying forfeiture of the lease. *White v. Jenkins*, 2002 WL 31106423, *2 (Tenn. Ct. App. Sept. 23, 2002).

More importantly, the option in *Chapman* was timely exercised before the lease expired or was terminated. In this case, the lease had expired years before the plaintiff sought to exercise its option. Having found that plaintiff failed to pay rent, thus a breach and the lease defaulted, the Trial Court erred in then finding that the option could be exercised under the terms of the original lease. Moreover, the Trial Court could not fault the defendants for failing to make an affirmative act to terminate the lease, when the lease does not require such.[2] In sum, since the lease had expired, and plaintiff was a holdover month-to-month tenant, plaintiff could not exercise

---

[1] For this reason, defendants' positions were not inconsistent when they sought to claim that the lease had expired, but that rent was still due.

[2] David Towe could be faulted for failing to act to recover continuing rental payments on behalf of his father's estate, since it had not been closed at the time of trial, and since he had a fiduciary obligation to act in the estate's behalf as executor. If any equitable/unclean hands problems exist in this case, they could be attributed to David Towe.

an option to purchase the property as that provision in the lease was no longer valid.. *See Boiler Supply Co., Inc., v. Lunn Real Estate Investments, Inc.*, 1998 WL 684599 (Tenn. Ct. App. July 1, 1998).

As this Court quoted in *Clark v. Cochran*, 1995 WL 507794 (Tenn. Ct. App. Aug. 29, 1995), "Equity's dislike for forfeiture is one thing, but rewriting the parties' contract is quite another." In this case, the Trial Court essentially rewrote the parties' lease to provide for automatic renewal of the lease term despite the fact that the lease was in default. This was not what the lease stated, and it is an often-cited principle in this jurisdiction that "[i]n the absence of mistake or fraud, the courts will not create or rewrite a contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them." *Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992). The Trial Court was in error in allowing plaintiff to circumvent the plain language of the lease.[3]

Having found the Trial Court's Judgment to be in error, the question of set off is largely moot. The question of whether these payments were properly characterized/treated by the Trial Court is relevant, however, to the ultimate question of the $2,000.00 monthly payments.

Plaintiff argues that it had no duty to pay the additional $2,000.00 per month to Lawrence Towe, Sr., and yet seems to argue that such payments were not a gift. The Trial Court agreed that Towe Iron had no duty to make these payments, and found that they were not "advance rent" as claimed by Towe Iron, and that Towe Iron was due no credit for these monies. The Trial Court's specific finding was that "[t]he evidence overwhelmingly confirms that [Towe Iron] paid the full amount of five thousand dollars per month instead of three thousand dollars per month to keep the decedent appeased, and without any expectation of repayment or credit for any advance rent." The Court found that David Towe (or anyone else) did not inform decedent that the $2,000.00 per month would have to be repaid or credited, that Towe Iron's records did not reflect these amounts as prepaid rent, and that David Towe testified that Towe Iron "had no knowledge that it could offset [these payments] until receiving such advice from counsel after the decedent's death."

The evidence supports the finding that these payments were a gift to Lawrence Towe, Sr. However, if the extra payments were not a gift, plaintiff would still not be entitled to set them off against its debt to the defendants. Plaintiff concedes that the right of set off "exists where a defendant seeks a reduction in debt claimed owing from it to the Plaintiff based upon the Plaintiff's owing of a debt to the Defendant which does not arise out of the same transaction upon which the Plaintiff filed its claim", citing *Howard v. Abernathy*, 751 S.W.2d 432 (Tenn. Ct. App. 1988).

In this case, any debt owed to Towe Iron would be by Lawrence Towe, Sr.'s estate,

---

[3] It should also be noted that where questions of contract interpretation arise, the wording of the contract is to be construed against the drafter, which in this case is plaintiff. *Hill v. Tennessee Rural Health Imp. Ass'n*, 882 S.W.2d 801 (Tenn. Ct. App. 1994).

and not by the defendants, who were not parties to this lease or the transactions at issue. As such, Towe Iron could have filed a claim against the estate for these monies. Further, David Towe, as executor of his father's estate and president of Towe Iron, did not consider this "prepaid rent" as a liability of his father's estate. We hold the Trial Court did not err in finding these payments were not rent, and thus, did not err in finding the lease to be in breach on October 2001.

We reverse the Trial Court's holding that the option to purchase could be exercised, and judgment will be entered against the plaintiff for rent payments of $3,000.00 per month due from October 2001 to the present.

The cause is remanded with costs of the appeal assessed to Towe Iron Works, Inc.

_____
HERSCHEL PICKENS FRANKS, P.J.