# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 20, 2011 Session

## CAMERON GENERAL CONTRACTORS, INC. v. KINGSTON PIKE, LLC

**Appeal from the Chancery Court for Knox County**
No. 175471-3     Michael W. Moyers, Chancellor

---

**No. E2010-02291-COA-R3-CV-FILED-DECEMBER 21, 2011**

---

Cameron General Contractors, Inc., a Nebraska corporation ("Cameron"), sued Kingston Pike, LLC, a Georgia limited liability company ("Kingston Pike"), for breach of a contract concerning the sale of real property located in Knoxville, Tennessee. Prior to trial, Cameron elected to exercise its contractual right to terminate the contract, and the case proceeded to trial on the issue of damages. After a bench trial, the Trial Court entered its order finding and holding, *inter alia*, that the contract did not limit Cameron to the return of its earnest money, and granting Cameron a judgment against Kingston Pike for damages in the amount of $872,418.22, plus attorney's fees of $137,656.56. Kingston Pike appeals to this Court. We find and hold that the contract at issue clearly and unambiguously provides that once Cameron chose to terminate the contract, Cameron's sole remedy for Kingston Pike's breach was a return of Cameron's earnest money deposit. We, therefore, reverse the Trial Court's October 28, 2010 order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Arthur G. Seymour, Jr., and Matthew A. Grossman, Knoxville, Tennessee, and Ron L. Quigley, and Matthew R. Thiry, Atlanta, Georgia for the appellant, Kingston Pike, LLC.

Lewis S. Howard, Jr., and Heather G. Anderson, Knoxville, Tennessee, for the appellee, Cameron General Contractors, Inc.

# OPINION

## Background

In October of 2007, Cameron and Kingston Pike entered into a Real Estate Purchase Agreement ("the Contract") for Cameron to purchase real property in Knoxville, Tennessee from Kingston Pike for development as a senior independent living facility. Under the terms of the Contract, Kingston Pike was to satisfy certain obligations prior to closing including, among other things, grading the site, creating a building pad, and constructing a common roadway.

In pertinent part, the Contract provided:

5. Contingencies. The contingencies described in Section 3, 4, 8 and 9 are for the benefit of [Cameron] and shall be satisfied (or waived) by [Cameron] in writing prior to Closing. These contingencies shall be satisfied (or waived) within ten (10) months from the Effective Date (subject to "Force Majeure Matters" as defined below), except as may be extended by written agreement between the parties, or [Cameron] shall be entitled to terminate this Agreement and receive a prompt refund of the Earnest Money from the Title Company. If and in the event the specific contingencies enumerated in the foregoing subsections are not met to [Cameron's] reasonable satisfaction, [Cameron] may, at its option, terminate this Agreement without further obligation to [Kingston Pike] (other than with regard to obligations under this Agreement that expressly survive the termination of this Agreement) and the Title Company shall promptly return the Earnest Money to [Cameron]….

\* \* \*

12. Seller's Default. Subject to the terms and provisions of Section 34 of this Agreement, if the sale and purchase of the Property contemplated by this agreement is not consummated on account of [Kingston Pike's] default or breach of any of the terms or conditions contained herein, [Cameron] may either (a) terminate this Agreement by written notice to [Kingston Pike] and to the Title Company whereupon [Cameron] shall receive a prompt refund of the Earnest Money and the parties shall have no further rights or obligations hereunder except for the obligations that expressly survive the termination of this Agreement, or (b) if [Kingston Pike] then owns the Property, [Cameron] shall have the right to file an action for specific performance.

The Contract contemplated that Kingston Pike would complete its site development obligations within a ten month deadline after the effective date of the Contract. After approximately twenty months had passed from the effective date of the Contract, Cameron filed this lawsuit alleging, among other things, that Kingston Pike had failed to complete its site development obligations, and seeking, among other things, specific performance.

The Trial Court bifurcated the trial and first heard evidence concerning whether the delay penalty provided for in the Contract was enforceable. After the trial on this issue, the Trial Court entered its order on September 10, 2009 finding and holding, *inter alia*, that the delay penalty contained in the Contract constituted a penalty and was not enforceable against Kingston Pike, that Kingston Pike was in breach of the Contract, and that Cameron was entitled to specific performance.

The case proceeded to trial on the issue of damages suffered by Cameron as a result of Kingston Pike's breach of the Contract. Prior to the start of trial, Cameron elected to exercise its contractual right to terminate the Contract. After the trial, the Trial Court entered its order on October 28, 2010 finding and holding, *inter alia*, that the Contract does not limit Cameron to either an award of specific performance or a return of its earnest money, and that Cameron was entitled to an award of damages in the amount of $872,418.22, plus attorney's fees of $137,656.56. Kingston Pike appeals to this Court.

## Discussion

While Kingston Pike raises multiple issues on appeal, we find three issues to be dispositive. We restate the issues as: 1) whether the Trial Court erred in finding Kingston Pike in breach of the Contract; 2) whether the Trial Court erred in awarding Cameron damages for breach of Contract; and, 3) whether the Trial Court erred in awarding Cameron attorney's fees. Kingston Pike also requests an award of attorney's fees on appeal. Cameron raises an issue on appeal regarding whether the Trial Court erred in holding that the delay penalty in the Contract was unenforceable, and also requests attorney's fees on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

As our Supreme Court has instructed:

"The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc*., 521 S.W.2d 578, 580 (Tenn. 1975); *see also Christenberry*, 160 S.W.3d at 494. If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its "plain, ordinary, and popular sense." *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580; *Planters Gin Co.*, 78 S.W.3d at 890. The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect. *See Davidson v. Davidson*, 916 S.W.2d 918 922-23 (Tenn. Ct. App. 1995). The entire written agreement must be considered. *D. & E. Const. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 518-19 (Tenn. 2001).

> In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts. It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.

*Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985) (internal citations omitted).

However, on occasion, a contractual provision may be susceptible to more than one reasonable interpretation, rendering the terms of the contract ambiguous. *Planters Gin. Co.*, 78 S.W.3d at 890. "Ambiguity, however, does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001) (internal quotation marks and citations omitted). The court will not use a strained construction of the language to find an ambiguity where none exists. *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

*Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703-04 (Tenn. 2008).

-4-

We first consider whether the Trial Court erred in finding Kingston Pike in breach of the Contract. The Contract clearly and unambiguously provides in section 5 that the contingencies described in sections 3, 4, 8, and 9 shall be satisfied or waived within ten months of the effective date of the Contract. These specific contingencies included Kingston Pike's site development obligations. The record reveals that there is no question that Kingston Pike failed to complete the required site development obligations within ten months. The record also reveals that Cameron did not waive the ten month provision. In fact, the record reveals that even after Cameron filed this lawsuit, Kingston Pike continued to make representations about the work and continued to fail to do the work required under the Contract. As such, Kingston Pike clearly was in default of section 5 of the Contract, and the evidence does not preponderate against the Trial Court's findings as to this issue.

Although Kingston Pike argues that it was not required by the Contract to complete its site development obligations within a time certain but rather was required only to complete them prior to an unspecified closing date, our holding is further supported by section 22 of the Contract, which states that "Time is of the essence of this Agreement …," and section 13 of the Contract, which also speaks of giving Cameron the option to terminate the Contract if Kingston Pike failed to complete the site development obligations within the ten month deadline. Furthermore, if we were to accept Kingston Pike's argument that its failure to complete the site development obligations by a time certain could not trigger a breach because these obligations were required only to be completed prior to some unspecified indefinite future closing date, then in essence Kingston Pike would have an unlimited time in which to complete its obligations under the Contract. Following this argument to its logical conclusion, Kingston Pike could take the next 100 years, or more, to complete its obligations and still not be in breach. Such a result would be ludicrous. Given all this, we find no error in the Trial Court finding Kingston Pike in breach of the Contract.

We next consider whether the Trial Court erred in awarding Cameron damages for breach of Contract. Section 12 of the Contract provides that in the event that Kingston Pike is in default of any of the terms or conditions of the Contract, Cameron has only two options. Cameron either may terminate the Contract, receive a prompt refund of its earnest money, and have no further rights or obligations under the Contract; or Cameron may, if Kingston Pike owns the subject property, file an action for specific performance.

Initially, Cameron filed suit for specific performance. Prior to the second phase of the bifurcated trial, however, Cameron announced that it was exercising its contractual right to terminate the Contract. Under the plain, clear, and unambiguous terms of the Contract, once Cameron elected to terminate the Contract, Cameron had the right to receive its earnest money back but would have no further rights or obligations except for those that expressly survived the termination. The right to sue for damages was not one of

the rights that expressly survived termination of the Contract. As such, it was error to award Cameron damages.

The record before us on appeal reveals that the Trial Court attempted to do equity. During the second phase of the bifurcated trial, the Trial Court specifically noted that Kingston Pike's "arguments make a lot of sense looking at the contractual language …. But I can't help but remember that this is a court of equity." We agree that Kingston Pike's "arguments make a lot of sense looking at the contractual language …."

It is not the role of the courts, even courts of equity, to rewrite contracts for dissatisfied parties. "[I]t is an often-cited principle in this jurisdiction that '[i]n the absence of mistake or fraud, the courts will not create or rewrite a contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them.'" *Towe Iron Works, Inc. v. Towe*, 243 S.W.3d 562, 569 (Tenn. Ct. App. 2007) (quoting *Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992)). The record now before us reveals no mistake or fraud. We, therefore, must interpret and enforce the Contract pursuant to its clear and unambiguous terms. The Trial Court's attempt to do equity, in essence, rewrote the Contract for the parties. Once Cameron exercised its contractual right to terminate the Contract, the clear and unambiguous language of the Contract limited Cameron's remedy to a return of its earnest money. While this result may be harsh, it is what the parties agreed to in the Contract. We reverse the award of damages to Cameron.

Next, we consider whether the Trial Court erred in awarding Cameron attorney's fees. With respect to attorney's fees, the Contract provides:

32. <u>Attorney's Fees</u>. In the event of litigation to enforce the rights and obligations under this Agreement, the prevailing party shall be entitled to recover against the other party its expenses of litigation (including, without limitation, attorney's fees, expenses, disbursements and court costs) actually incurred by the prevailing party in connection with such litigation.

Cameron filed suit to enforce its rights under the Contract. Unfortunately, Cameron cannot be considered a prevailing party in this lawsuit given our resolution of the first issue. Cameron elected to exercise its contractual right to terminate the Contract. As such, Cameron was entitled to receive a refund of its earnest money, which it did. This lawsuit, however, was not a suit seeking a refund of the earnest money but rather was a suit for specific performance and damages. As Cameron cannot be considered a prevailing party, Cameron is not entitled to an award of attorney's fees under the Contract. We, therefore, reverse the award of attorney's fees and costs to Cameron.

Finally, we consider the issue raised by Cameron regarding whether the Trial Court erred in holding that the delay penalty in the Contract was unenforceable. The delay penalty is contained within section 13 of the Contract under the title "Closing." Specifically, the Contract provides:

> [Cameron] shall have the option to terminate this Agreement in the event [Kingston Pike] does not complete the Site Development Obligations within the ten (10) month deadline (identified in Section 5) after the Effective Date; or [Cameron] may elect to wait until [Kingston Pike] completes the Site Development Obligations. If [Cameron], at its sole option, elects to wait until completion, the Purchase Price shall be decreased by Five (5) Per Cent for every full 30 day period of delay beyond the ten (10) month deadline (the "Delay Penalty")….

Under the clear and unambiguous terms of the Contract, in the event that Kingston Pike did not complete its site development obligations pursuant to the Contract, Cameron had the option either to terminate the Contract or wait. If Cameron chose to wait until Kingston Pike completed the site development obligations, then the delay penalty, assuming it was enforceable, would come into play. Cameron, however, chose to exercise its contractual right to terminate the Contract. As such, even if the delay penalty was enforceable, and we make no assertion with regard to whether it was or was not enforceable, it does not come into play. Because Cameron chose to exercise its option to terminate the Contract, this issue is moot.

In the exercise of our discretion, we decline to award either party attorney's fees on appeal as we have some difficulty in seeing how either party truly is a prevailing party in this lawsuit given its procedural history and the record before us.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellee, Cameron General Contractors, Inc.

_____
D. MICHAEL SWINEY, JUDGE