IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2025 Session

## MARINA KOTOVA v. THOMAS KEVIN TRUE

**Appeal from the Circuit Court for Carter County**
**No. C15219      James E. Lauderback, Judge**

_____

**No. E2025-00394-COA-R3-CV**

_____

Marina Kotova ("Plaintiff") and Thomas Kevin True ("Defendant"), who were formerly married, entered into an agreement whereby Defendant would purchase certain real property owned by Plaintiff pursuant to an installment purchase agreement. The agreement provided that, in the event of a default by Defendant, Plaintiff could sue for monetary damages, specific performance, or both. Additionally, an addendum to the agreement allowed Plaintiff to evict Defendant from the property if he was in default for more than thirty days. Defendant defaulted, and Plaintiff sued him seeking possession of the property and monetary damages. The trial court instead awarded Plaintiff specific performance, which required Plaintiff to sell the property to Defendant upon Defendant curing his default. Plaintiff appeals the trial court's award of specific performance. We find that the trial court erred by awarding Plaintiff a remedy other than what she requested, and we reverse the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Robert M. Asbury, Marion, Virginia, for the appellant, Marina Kotova.

Regina L. Shepherd, Elizabethton, Tennessee, for the appellee, Thomas Kevin True.

## OPINION

### BACKGROUND

Plaintiff and Defendant married in 2000 and divorced in 2008. During the marriage, they purchased a condominium located in Carter County, Tennessee (the "Property"). At closing, the parties executed a warranty deed and deed of trust which listed both parties as owners of the Property; however, only Defendant is an obligor on the promissory note secured by the deed of trust. When the parties divorced in 2008, the Property was awarded to Defendant. In 2013, Defendant fell behind on the mortgage payments. To keep the Property out of foreclosure, the parties agreed that Plaintiff would pay $5,000 toward the outstanding mortgage, and Defendant would quitclaim his interest in the Property to her, which he did on February 8, 2013. Plaintiff lived at the Property and paid the mortgage and property taxes from 2013 until 2019.

On November 19, 2019, the parties entered into a Real Estate Purchase Agreement (the "REPA"), which Defendant drafted. The REPA provided that Plaintiff would sell the Property back to Defendant. The REPA provides, in relevant part:

> 2. Purchase Price. The purchase price is current remaining balance to Wells Fargo Bank plus $15,000 paid to seller. Sellers[1] agree to relinquish warranty deed upon receipt of $15,000 to Thomas True. A minimum payment of $225.00 per month for a period of no longer than ten years will be paid by buyer as required by sellers. Buyer can make larger payments to pay amount in a more timely fashion to offset accumulating interest costs. Buyer's name is on current mortgage note with a current balance of approximately $47,373.29.
>
> Upon signing this Real Estate purchase agreement on date agreed upon, buyer will resume payments of mortgage agreement with Wells Fargo Bank in addition to payments to sellers to obtain deed of the aforementioned property.
>
> * * *
>
> 11. Default. Should Buyer default, the earnest money[2] shall be forfeited to Seller, and Seller may sue for additional damages, specific performance of

---

[1] Plaintiff remarried prior to the execution of the REPA, and Plaintiff and her then-husband were jointly identified as "Sellers" in the REPA. Plaintiff subsequently divorced in 2022, and the trial court awarded the Property to Plaintiff in that divorce.

[2] Despite this reference to earnest money, the REPA did not require that any earnest money be paid, and none was.

the Agreement, or both. Should Seller default, the earnest money shall be refunded to the Buyer, and Buyer may sue for damages, specific performance of this Agreement, or both. The prevailing party in litigation shall be entitled to recover all costs of enforcement, including reasonable attorney's fees.

\* \* \*

16. Other Terms. The following terms and conditions supplement or supersede other provisions of this Agreement
.

\*NOTE: <u>Sellers agreement includes additional terms & conditions, See attached page: "Payment direct to sellers" included with this agreement.</u>\*

Along with the REPA, the parties executed a document titled "Seller's terms and conditions of purchase agreement" (the "Addendum"). The Addendum provides, in relevant part: "At any default of thirty days an eviction notice will be enforced and [Defendant] must comply with the after written acknowledgement of this purchase agreement."

Defendant stopped making payments to Plaintiff, and on December 30, 2022, Plaintiff sent Defendant a letter directing him to vacate the premises within ten days due to his failure to make monthly payments. On January 26, 2023, Plaintiff filed a detainer summons in the Carter County General Sessions Court requesting "possession of the property, all unpaid rent owed as of the court date, restitution for damages to the property, attorney fees (if provided for in the contract), and all court costs and litigation taxes." Following a bench trial, the General Sessions Court awarded Plaintiff possession of the property and a $7,625.00 judgment against Defendant. Defendant appealed the judgment to the Carter County Circuit Court (the "trial court").

The trial court held a bench trial on September 28, 2023, and entered an order memorializing its rulings on October 26, 2023. The trial court found that Defendant had breached the parties' agreement by failing to make monthly payments to Plaintiff, awarded Plaintiff a judgment against Defendant totaling $14,445.32, and ordered Plaintiff to quitclaim her interest in the Property to Defendant within thirty days of his full payment of the judgment. The order incorporates the trial court's oral ruling, which includes in relevant part:

> Being in default, we need to look at the next part of [the REPA], which is Paragraph 11, which reads, "Should the buyer default, the earnest money shall be forfeited to the seller, and seller may sure [sic] for additional damages, specific performance, or both." There was no earnest money paid in this case, so that's not really applicable to this case.
>
> But, considering the case in the nature of a breach of contract, specific performance, if he had specifically performed the contract as he agreed to do

and fully paid the $15,000, he would have actually had until roughly 2025 to do that, if he had paid out every month like you're supposed to have done.

So, but, when a breach of contract occurs, you can sue under a specific performance theory and what you're supposed to have done and agreed to have done can become due. So that's the way I'm going to interpret the facts of this case and interpret this agreement that we have to deal with, which is confusing,[3] to say the least, in some respects.

On November 22, 2023, Plaintiff filed a motion pursuant to Tenn. R. Civ. P. 52.02, 59.04, and 59.01 asking the trial court to alter or amend the judgment or grant her a new trial because "Findings of Fact and Conclusions of Law need to be made in order to fully understand the Court's rationale, and alternatively since the record is silent as to any proof that would not entitle the Plaintiff to the return of her real property after Defendant's breach, a new trial should be held." On June 6, 2024, the trial court entered an order denying Plaintiff's post-judgment motion, finding in relevant part:

In the Court's prior ruling, it found that according to [the REPA], the Defendant intended on entering into a contract to pay the Plaintiff for the real property. Further, the Court found that the remedy for any breach of the contract was governed by Paragraph Number 11 of [the REPA], which was specific performance. The goal of specific performance is for the Court to put the Plaintiff back to the position of being whole, as if the Defendant had not breached the contract and paid the amount owed to the Plaintiff in full. The Court is still of the opinion that the prior ruling of this confusing and factual case rendered in this cause is correct and the Court did the best it could.

This is Plaintiff's second appeal of the trial court's judgment. The first appeal was dismissed as untimely. *Kotova v. True*, No. E2024-01430-COA-R3-CV, 2024 WL 4524740, at *1 (Tenn. Ct. App. Oct. 18, 2024), *no perm app. filed*. In that appeal, Plaintiff contended that the first notice of appeal was mailed to this Court on July 3, 2024, but never arrived at the Appellate Court Clerk's Office. *Id*. After our dismissal of the first appeal and remand to the trial court, Plaintiff filed a motion pursuant to Tennessee Rule of Civil Procedure 60.02(1) and (5) asking the trial court to vacate and re-enter its final order to allow Plaintiff an opportunity to file a timely notice of appeal. On March 19, 2025, the trial court found clear and convincing evidence that Plaintiff should be granted the

---

[3] As further explained by the order, the trial court's "confusion" stems from the fact that the period of time the REPA provides Defendant to pay off the balance owed to Plaintiff is longer than the time it would actually take Defendant to pay the amount owed to Plaintiff if Defendant had kept up with the monthly payments.

requested relief. Accordingly, it set aside and re-entered its final order as of March 19, 2025. Plaintiff timely filed a second notice of appeal with this Court on March 20, 2025.

**ISSUES**

Plaintiff's appellate brief does not include a Statement of the Issues; however, the gist of Plaintiff's argument is that the trial court erred in awarding Defendant "possession and ownership of" the Property. In his capacity as appellee, Defendant argues that he should be awarded his attorney's fees incurred in opposing Plaintiff's Motion to Alter or Amend Judgment and on appeal.

**DISCUSSION**

This case was tried by the trial court sitting without a jury. We review the trial court's factual findings de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. *Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d). The trial court's legal conclusions, however, are reviewed de novo without a presumption of correctness, and we must "reach [our] own independent conclusions regarding these issues." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). The interpretation of a written contract is a question of law that we review de novo. *Pandharipande v. FSD Corp.*, 679 S.W.3d 610, 618 (Tenn. 2023). As our Supreme Court has explained:

> It is well settled that courts must examine the content of the entire written agreement to determine the contracting parties' intent. "Contractual terms should be given their ordinary meaning . . . and should be construed harmoniously to give effect to all provisions and to avoid creating internal conflicts." *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). In addition, a contract's provisions must be interpreted in the context of the entire contract, "'viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illustrate another.'" *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn.1999) (quoting *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)); *see also Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 597 (Tenn. Ct. App. 1999).

*D & E Const. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 518–19 (Tenn. 2001).

Plaintiff argues that the trial court erred in awarding her specific performance when she never requested such remedy. We agree. Generally, "a decree for specific performance will enforce a contract as it was made by the parties." *Inman v. Union Planters Nat. Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). However, "the remedy of specific performance exists for the benefit of the aggrieved party to a breach of contract and not to

- 5 -

the party guilty of the breach." *Wall v. Thalco, Inc.*, 614 S.W.2d 803, 806 (Tenn. Ct. App. 1981). Moreover, a plaintiff is the master of his or her complaint. *Binns v. Trader Joe's E., Inc.*, 690 S.W.3d 241, 255 (Tenn. 2024) (citing *Mullins v. State*, 294 S.W.3d 529, 540 (Tenn. 2009)). And, "[i]t is not the role of the courts . . . to rewrite contracts for dissatisfied parties." *Cameron Gen. Contractors, Inc. v. Kingston Pike, LLC*, 370 S.W.3d 341, 346 (Tenn. Ct. App. 2011). In the absence of mistake or fraud, this holds true even when the contractual terms "are harsh or [when] one of the parties was unwise in agreeing to them." *Id.* (quoting *Towe Iron Works, Inc. v. Towe*, 243 S.W.3d 562, 569 (Tenn. Ct. App. 2007)).

The REPA clearly incorporated the Addendum; as such, we must construe the parties' agreement as a whole. The plain language of the REPA provides that, in the event of Defendant's breach, Plaintiff "may sue for additional damages, specific performance of the Agreement, or both." Furthermore, the plain language of the Addendum allows Plaintiff to evict Defendant from the Property if his default continues for more than thirty days. Defendant does not appeal the trial court's ruling that he was in default, nor is it disputed that his default continued for more than thirty days. Defendant argues that if Plaintiff "did not want [s]pecific [p]erformance to be a remedy for a breach of the agreement, she should have stricken that remedy from the parties' agreement." However, this argument ignores the fact that the agreement allows Plaintiff to choose her remedy, and she never sought specific performance of the agreement. "Plaintiff did not seek, and should not be forced to accept, specific performance as [her] remedy." *Jamison v. Jamison Pest Control Co.*, 852 S.W.2d 884, 887 (Tenn. Ct. App. 1992). Instead, Plaintiff sought the remedy of eviction and damages.

Consequently, the trial court erred, and we reverse and remand this case for further proceedings. Additionally, because Defendant is not the prevailing party, his issue regarding whether he should be awarded his attorney's fees is pretermitted.

## CONCLUSION

The ruling of the Circuit Court for Carter County is hereby reversed, and this case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to the appellee, Thomas Kevin True, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE