IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 2022 Session

## KENIA MORENO v. MEHREBAN JAZZABI, EXECUTRIX OF ESTATE OF BEN JAZZABI

**Appeal from the Circuit Court for Davidson County**
**No. 14C2126   Amanda Jane McClendon, Judge**

———————————————————

### No. M2021-00024-COA-R3-CV

———————————————————

A landlord and tenant entered into a lease-purchase agreement.  Near the end of the lease term, the tenant sought to exercise the purchase option.  The landlord claimed that the tenant could not do so because she defaulted on rent payments.  The landlord also argued that he terminated the agreement before the tenant exercised the option.  The trial court rejected both arguments and granted the tenant specific performance of the purchase option.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Daniel Turklay, Mt. Juliet, Tennessee, for the appellant, Mehreban Jazzabi, executrix of the Estate of Ben Jazzabi.

Dan R. Alexander, Old Hickory, Tennessee, for the appellee, Kenia Moreno.

### MEMORANDUM OPINION[1]

### I.

Sometime in 2009 or 2010, Ben Jazzabi met Mateo Lux Bach at a Home Depot. Mr. Jazzabi was looking for someone to fix up improved property he owned in Antioch, Tennessee.  Mr. Bach agreed to do so in exchange for living there without paying rent.

---

[1] Under the rules of this Court, as a memorandum opinion, this opinion may not be published, "cited[,] or relied on for any reason in any unrelated case."  TENN. CT. APP. R. 10.

After Mr. Bach worked on the property for some time, Mr. Jazzabi wanted to sell it. Mr. Bach told him that his sister-in-law, Kenia Moreno, was interested. Later, Ms. Moreno and Mr. Jazzabi signed a "Residential Lease Agreement for Single-Family Dwelling."

The lease agreement ran from June 1, 2011, to May 31, 2014, and required rent of $500 per month. If rent was not paid when due, Mr. Jazzabi had the right to terminate the agreement. Under a "special stipulation" in the agreement, Ms. Moreno could purchase the property. The stipulation required a $10,000 non-refundable deposit to be used as earnest money. And it provided that the $500 per month rent would go toward the purchase price. By its terms, the special stipulation controlled if it conflicted with any other provision of the lease agreement.

In October 2011, Mr. Jazzabi sent Ms. Moreno a letter complaining that she never made the full earnest money deposit. And he claimed that she was behind on rent. In May 2012, he sent her another letter with the same complaints and threatened eviction. Mr. Jazzabi sent Ms. Moreno yet another letter in June 2013. The letter provided that she had "fallen further behind" in her payments. He also wrote that "the contract is considered void." But Ms. Moreno remained on the property. And Mr. Jazzabi continued accepting payments.

Near the end of the lease term, Ms. Moreno wanted to exercise her option to purchase the property. She told Mr. Jazzabi, asked for a payoff amount, and requested a closing. Mr. Jazzabi refused. Ms. Moreno then sought legal counsel, who wrote a letter to Mr. Jazzabi. The letter, dated May 14, 2014, demanded that Mr. Jazzabi "close on the property and execute a deed to Ms. Moreno." When Mr. Jazzabi still refused, Ms. Moreno sued him in circuit court for specific performance. Soon after, Mr. Jazzabi filed a detainer warrant against Ms. Moreno in general sessions court for possession of the property.[2]

The trial of the circuit court action focused on whether Ms. Moreno had the right to exercise the option. How much money Ms. Moreno paid under the contract was hotly contested. A ledger that purported to reflect each payment was admitted into evidence.

Ms. Moreno claimed that she was never behind on payments. She testified that she made some payments in cash, but Mr. Jazzabi did not provide receipts for all the cash payments. So, she explained, the ledger did not reflect all her payments. And she argued that, even if she were in default on the payment of rent, the default did not prevent her from exercising the purchase option.

Mr. Jazzabi claimed that Ms. Moreno was in default on payments. He agreed that she made some payments in cash. But he testified that he provided receipts for all cash payments. So the ledger did, in fact, reflect all of Ms. Moreno's payments. And those

---

[2] The record does not reveal the disposition of the case filed by Mr. Jazzabi in general sessions.

payments did not add up to the amount owed under the lease agreement. Because of the default, Mr. Jazzabi argued that Ms. Moreno could not exercise the purchase option. He also argued that she could not exercise the option because he terminated the lease agreement with the letters he sent her.

The trial court found that the full earnest money deposit was made, but not all at once. And further payments under the agreement were "sporadic." Payments would become delinquent, and Ms. Moreno would only make partial payments to make up for it. But Mr. Jazzabi accepted them anyway, even after his letters threatening eviction and seeking to "void" the contract. The court also reasoned that the purchase option was separate from the lease terms. So a breach of the lease would not prevent Ms. Moreno from exercising the option. Instead, Mr. Jazzabi "had an absolute duty to come to a closing." If Ms. Moreno was delinquent, it was "a question of amount," not "an excuse for non-compliance" with the purchase option. Ms. Moreno was thus entitled to specific performance.

## II.

Because this was a bench trial, our review is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review the trial court's conclusions of law de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

On appeal, Mr. Jazzabi's estate[3] argues that he terminated the lease agreement before Ms. Moreno exercised the purchase option. The estate claims that he did so when he declared the contract "void" in his June 2013 letter. Even if there was no termination, the estate contends that Ms. Moreno committed a material breach that extinguished the option. Specifically, Ms. Moreno failed to satisfy her "financial obligations to Mr. Jazzabi."

As the estate recognizes in its brief, the trial court impliedly found that there was no termination. Whether a party has terminated a contract is a question of fact. 17A AM. JUR. 2D *Contracts* § 514, Westlaw (database updated May 2022); *see Ballard v. N. Am. Life & Cas. Co.*, 667 S.W.2d 79, 84 (Tenn. Ct. App. 1983); *Cameron v. J. C. Lawrence Leather Co.*, 342 S.W.2d 65, 66 (Tenn. Ct. App. 1960) (reasoning that "whether the contract is to be regarded as terminated depends on the facts of the particular case").

---

[3] After filing his notice of appeal, Mr. Jazzabi passed away. Upon the motion of the executrix of his estate, we ordered the substitution of the estate as the appellant. *See* TENN. R. APP. P. 19(a).

Here, the evidence does not preponderate against the court's implicit finding that the lease agreement was not terminated. Despite declaring the lease agreement "void" in June 2013, Mr. Jazzabi continued accepting payments thereafter without reservation and allowed Ms. Moreno to remain in possession of the property. Under the Uniform Residential Landlord and Tenant Act, a landlord that "accepts rent without reservation and with knowledge of a tenant default . . . condones the default and thereby waives such landlord's right and is estopped from terminating the rental agreement as to that breach." Tenn. Code Ann. § 66-28-508 (2015). It was not until June 2014—after the expiration of the agreement's term and Ms. Moreno's exercise of the purchase option—that Mr. Jazzabi sought possession of the property through a detainer action.

As for the estate's claim that Ms. Moreno committed a material breach that extinguished the option, the estate concedes that "[t]he trial court . . . makes no explicit ruling as to whether [Ms. Moreno] was in breach of contract." Instead, the estate argues the court's "own findings of payments made by [Ms. Moreno] objectively leave [Ms. Moreno] delinquent from the signing of the contract to the time [she] demanded to purchase the property in May of 2014."

The court concluded that the purchase option was independent from the obligation to pay rent. Thus, Ms. Moreno's failures to timely pay rent were irrelevant. Determining whether the purchase option was independent of the lease involves interpreting the contract, which is a question of law. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006); *see also* Wade R. Habeeb, Annotation, *Lessee's Breach of or Default Under Lease Agreement as Affecting his Right in Respect of Option to Purchase under the Lease*, 53 A.L.R.3d 435 (originally published in 1973), Westlaw (ALR database updated weekly) (recognizing that "[t]he question whether the option and lease are one agreement so that the breach of the lease renders the option to purchase nugatory, or are independent so that the breach of the lease has no effect on the option, has been said, in a few cases, to resolve itself into a problem of construction of the instrument and of determining the intent of the parties"). The "cardinal rule" of contract interpretation is "to ascertain and give effect to the intent of the contracting parties." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 688 (Tenn. 2019). We "must look at the plain meaning of the words in a contract to determine the parties' intent." *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009).

Generally, "an option to purchase under the terms of a lease may not be exercised where the lessee has breached or defaulted under the lease agreement." *Towe Iron Works, Inc. v. Towe*, 243 S.W.3d 562, 568 (Tenn. Ct. App. 2007). But parties may agree differently. *See id.* ("[I]t has been held that through a lease agreement, the parties can 'contract out of' an adverse common law rule/requirement."). Here, the parties' special stipulation, which contained the purchase option, provided that it would "control" over any conflicting provision of the lease agreement. And exercise of the option was not expressly conditioned on performance of the terms of the lease. Still, we conclude that the language

4

of the special stipulation failed to create an option independent of the lease. The purchase option was not inconsistent with any other term of the lease, and it was not supported by separate consideration. *See Mitchell v. Wayave*, 40 S.E.2d 284, 288 (Va. 1946) (reasoning that whether an option is part of the lease depends on "whether the fulfilment of the covenants of the lease . . . was intended to constitute at least a part of the consideration for the option") (citation omitted); *cf. Mathews Slate Co. v. New Empire Slate Co.*, 122 F. 972, 979 (N.D.N.Y. 1903) (reasoning that an option was independent of the lease where separate consideration of one dollar supported the option).

Even so, we conclude that the estate's argument that the option was extinguished by a material breach fails. The estate's argument ignores the impact of the Uniform Residential Landlord and Tenant Act and the court's finding that Mr. Jazzabi "continued to accept late payments." By accepting late payments, Mr. Jazzabi condoned any default related to the untimely payment of rent. *See* Tenn. Code Ann. § 66-28-508. Delinquent rent payments could no longer support a claim of breach that would extinguish the option.

## III.

Mr. Jazzabi did not terminate the lease agreement before Ms. Moreno exercised her option to purchase the leased property. And, despite her failure to timely pay rent, she was entitled to do so. So we affirm the trial court's judgment.

                        s/ W. Neal McBrayer
                        W. NEAL MCBRAYER, JUDGE